**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos A. PALACIOS, Defendant–Appellant.**

No. 87–5024.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 2, 1987.[*]

Decided Dec. 30, 1987.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

I. Mark Bledstein and Phillip I. Bronson, Encino, Cal., for defendant-appellant.

Before ANDERSON, PREGERSON and NOONAN, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Carlos Palacios appeals his conviction, in two counts, for possessing counterfeit bills and for passing counterfeit bills, in violation of 18 U.S.C. § 472. Count I charged Palacios with possessing counterfeit bills. Count II charged Palacios with passing counterfeit bills, in violation of 18 U.S.C. § 472. Palacios contends that the government failed to present sufficient evidence from which a jury could conclude beyond a reasonable doubt that he knew that the bills were counterfeit. He also contends that the district court subjected him to double jeopardy by imposing consecutive sentences for the convictions on both counts of 18 U.S.C. § 472. We affirm the district court.

## I. FACTS

On September 15, 1986, Palacios entered the East Hollywood branch of Bank of America, asked teller Sakalarian for a cashier's check for $4,950, and gave Sakalarian forty-nine 100 dollar bills and one 50 dollar bill. Because the bills appeared odd, Sakalarian became suspicious and asked Palacios if the money was real. Palacios stated that it was. Sakalarian asked Palacios where he obtained the money. Palacios first said someone gave it to him to buy a cashier's check, then he said he got it "downtown," and then said a "bank downtown." Sakalarian's supervisor, Susan Doyle, telephoned the Secret Service to de-

Fred D. Heather, Los Angeles, Cal., for plaintiff-appellee.

termine the authenticity of the bills. By phone, the Secret Service verified that some of the money was counterfeit and asked Doyle to detain Palacios until they arrived. Doyle asked the bank guard to tell Palacios to take a seat until the bank could complete the transaction and Palacios did so.

About twenty minutes later, Secret Service agents Michael Lee and James Gehr arrived at the bank. They determined that 44 of the $100 bills were counterfeit. Gehr informed Palacios that the money he had attempted to use in the bank was counterfeit and advised Palacios of his Miranda rights. Palacios told Gehr that he obtained the money from a friend in Columbia the year before. Lee then searched Palacios and discovered 46 counterfeit $100 bills in his pants pocket. Later the same day, Palacios told another Secret Service agent, Walter Maez, that he had gotten the money from a friend, John Martinez, who had given him $10,500 in cash to purchase two cashier's checks in the amount of $4,950 each and had told him to keep the difference.

Palacios was charged in a two-count indictment for passing and possessing counterfeit bills in violation of 18 U.S.C. § 472. The jury convicted him of both counts. He was sentenced to four years in prison for passing the 44 bills, with a consecutive five-year term of probation for possessing the 46 bills found in his pocket. He timely appeals.

## II. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Standard of Review

■ There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Douglass*, 780 F.2d 1472, 1476 (9th Cir.1986). Knowledge that the bills are counterfeit is an element of a violation

of 18 U.S.C. § 472. *United States v. Barham*, 466 F.2d 1138, 1141 (9th Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1356, 35 L.Ed.2d 587 (1973).

#### 2. Discussion

Palacios contends that there is insufficient evidence that he knew the bills were counterfeit. We disagree.

■ The most probative evidence of Palacios' guilty knowledge was three contradictory statements that Palacios made to explain where and when he obtained the bills. At trial, the bank teller, Sakalarian, testified that Palacios told him that he got the money from a bank downtown. Secret Service agent Gehr testified that Palacios told him that he got the money in Columbia the year before. Secret Service agent Maez testified that Palacios told him that a person named John Martinez had given him the money on September 10th and had asked Palacios to purchase two cashier's checks with the bogus money. According to this third story, Palacios was to go to a designated phone booth at 8:00 p.m. on September 15th and await a phone call. At that time, Martinez allegedly was to call Palacios to advise him what to do with the cashier's checks. Secret Service agents accompanied Palacios to the phone booth on the evening of September 15th. No phone call ever came in to the phone booth. At trial, Palacios denied having told Sakalarian that he got the money at the downtown bank. Likewise, he could not remember telling Maez that he got the money in Columbia the year before.

The jury could consider these inconsistent statements as evidence that Palacios knew the bills to be counterfeit. *See United States v. Barham, supra*, 466 F.2d at 1140–41. In light of this, we are satisfied that a rational jury, viewing the evidence in the light most favorable to the government, could have concluded beyond a reasonable doubt that Palacios, with intent to defraud, knew that the currency possessed and passed by him was counterfeit.

## B. Double Jeopardy

### 1. Standard of Review

We review the legality of a sentence *de novo*. *United States v. Arbelaez*, 812 F.2d 530, 532 (9th Cir.1987); *United States v. Whitney*, 785 F.2d 824, 825 (9th Cir.1986) (per curiam).

### 2. Discussion

■ Palacios contends that the double jeopardy clause of the fifth amendment, which "protects against multiple punishments of the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), protects him against separate punishment for possessing counterfeit currency on or about September 15, 1986, and for passing counterfeit currency to the bank on the same date.

Relying upon *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), Palacios argues that Congress could not have intended double punishment because his possession of counterfeit currency "necessarily is included" within the illegal passing.

The defendant in *Ball* was sentenced separately for receiving a firearm shipped in interstate commerce and for possessing the same firearm. The Supreme Court held that the defendant could be sentenced only once because Congress did not intend to authorize separate punishment for illegally possessing a firearm while receiving it when "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." *Ball*, 470 U.S. at 862, 105 S.Ct. at 1672 (emphasis in original).

We employed similar reasoning in *United States v. Sanford*, 673 F.2d 1070 (9th Cir.1982), where we ordered resentencing for a defendant who had been sentenced to consecutive terms of imprisonment for the transfer of counterfeit notes and for possession of the same notes. In *Sanford*, the evidence showed that the government informant obtained counterfeit bills from the defendant, but there was no evidence showing that the defendant possessed the notes "at any time prior to the moment of transfer." *Id.* at 1071. Therefore, we held, "[o]n the facts of this case, the two offenses charged were in reality only one offense for which consecutive sentences are improper." *Id.* However, in our case, Palacios had 46 counterfeit bills hidden on his person after he had already attempted to pass 44 other counterfeit bills. Thus, the two counts charged separate offenses. They were not the same offense because Palacios separately retained the 46 counterfeit bills in his pocket. The 46 counterfeit bills were not part of the transaction in which the quantity of 44 counterfeit bills was passed.

In *United States v. Palafox*, 764 F.2d 558 (9th Cir.1985) (en banc), we held that a defendant who was properly convicted on one count of distributing a sample of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of possessing the remainder in violation of the same section could not be required to serve two concurrent sentences. In *Palafox*, an undercover agent negotiated to buy heroin from the defendant and asked for a sample to inspect. The defendant handed the agent a package of heroin, which the agent promptly returned after removing a small quantity. The defendant was immediately arrested and convicted both of possessing heroin with intent to distribute and of actually distributing heroin. In holding that there could only be one punishment, we reasoned that "each offense [was] committed at virtually the same time, in the same place, and with the same participants." *Palafox*, 764 F.2d at 562. In the present case, Palacios retained counterfeit bills on his person while passing a separate quantity of counterfeit bills. Although technically, Palacios possessed the 46 counterfeit bills, his actions were not the same as those of the defendant in *Palafox*.

The *Palafox* defendant distributed the sample of heroin to the agent so that the agent could evaluate the quality of the heroin the defendant was prepared to sell at that moment. Therefore, Palacios would have had to make the bank teller aware that he intended to pass the remaining 46

counterfeit bills as part of the passing of the 44 counterfeit bills to be similar to the *Palafox* defendant. However, Palacios did not do this. In fact, the existence of the 46 counterfeit bills was not discovered until Palacios was searched. Prior to the search, Palacios did not reveal to anyone that he had more counterfeit bills which he desired to pass. Therefore, *Palafox* is distinguishable from this case.

Similarly, in *United States v. Rodriguez–Ramirez*, 777 F.2d 454 (9th Cir.1985), the evidence showed that after providing an undercover agent with a sample, the defendant retained possession of the remainder of a bag of heroin for two days before he was arrested. We held that "[b]ecause the distribution of the sample and the possession of the remainder did not occur 'at the same time, in the same place, and with the involvement of the same participants,' ... separate convictions and punishments for these two violations are appropriate." *Rodriguez–Ramirez*, 777 F.2d at 457–58 (quoting *Palafox*, 764 F.2d at 563).

Moreover, this is not the first time that we have confronted this distinction. In *United States v. Wolf*, 813 F.2d 970 (9th Cir.1987), the defendant was convicted of transporting a stolen vehicle in foreign commerce in violation of 18 U.S.C. § 2312, and for possessing the vehicle while transporting it in violation of 18 U.S.C. § 2313. The district court imposed a five-year sentence for the transportation offense and a separate sentence of five years' probation for the possession offense, the sentences to run consecutively. In upholding the consecutive sentences, we found that proof of the defendant's possession was not limited to the time and place necessary to committing the act of transporting the stolen van. In distinguishing this feature from other cases, we stated:

> In all three cases, the proof of possession was limited to a momentary period of time necessary to commit an additional statutory offense, whether transfer of counterfeit notes (*Sanford*), distribution of heroin (*Palafox*), or receiving a firearm (*Ball*). In contrast, when the proof of possession was not limited to the same time and place that the additional offense was committed, we have held that separate punishment for possession and the other offense is permissible.

*Wolf*, 813 F.2d at 977.

The evidence in the case at bar makes this case more like *Rodriguez–Ramirez* and *Wolf* than like *Sanford, Palafox* or *Ball*. Depending upon which of the three stories is to be believed as to where and when Palacios obtained the counterfeit currency, the proof of possession is clearly not limited to the time and place that "passing" of the counterfeit bills was committed.

In so holding, we are consistent with other circuits that have reached the same result. *See, e.g., United States v. Crachy*, 800 F.2d 83 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 905, 93 L.Ed.2d 856 (1987).

> While one cannot receive contraband without possessing it, proof of receipt thus necessarily constituting proof of possession, it is entirely possible to possess contraband without transferring or delivering it. There is an obvious difference between keeping inventory on the shelf and transferring it to a customer. Proof of the former does not *"necessarily"* include proof of the latter, and where an illegal transfer of counterfeit currency occurs after what is shown to have been a significant period of illegal possession by the transferor, it does not violate the intent of Congress to punish the transferor for the transfer and the possessor for the possession notwithstanding that the transferor and the possessor happen to be the same person.

*Crachy*, 800 F.2d at 90 (emphasis in original); *United States v. Wilkerson*, 469 F.2d 963 (5th Cir.1972), *cert. denied*, 410 U.S. 986, 93 S.Ct. 1515, 36 L.Ed.2d 184 (1973) (proof that defendant claimed possession of counterfeit bills long prior to his actual delivery to the buyers is sufficiently distinct from proof of a later transfer as to warrant separate convictions and sentencing for both possession and transfer).

## III. CONCLUSION

We find that there was sufficient evidence that Palacios knew the currency pos-

sessed and passed by him to be counterfeit. We also find the separate convictions and punishments for these two violations are appropriate. The judgment of the district court is

AFFIRMED.