**Dwight RASHAD, Petitioner–Appellee,**

v.

**Sherry BURT, Respondent–Appellant.**

No. 96–1040.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 23, 1996.

Decided March 14, 1997.

Daniel J. Blank (argued and briefed), Thay, Gross, Steinway & Bennett, Birmingham, MI, for Petitioner–Appellee.

Don W. Atkins (argued and briefed), Office of the Prosecuting Attorney, Detroit, MI, for Respondent–Appellant.

Before: MARTIN, Chief Judge; WELLFORD and MOORE, Circuit Judges.

MARTIN, C.J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (pp. 682–83), delivered a separate dissenting opinion.

BOYCE F. MARTIN, Jr., Chief Judge.

Dwight Rashad sought a writ of habeas corpus, alleging that his state court felony conviction for possession with intent to deliver over six hundred and fifty grams of cocaine after an earlier conviction for possession of the same substance violated his rights under the Double Jeopardy Clause of the Fifth Amendment. The district court found double jeopardy and issued the writ. We agree and affirm.

I.

Rashad's two convictions grew out of the execution of a single search warrant at a private home on September 7, 1988. On that date Detroit police conducted surveillance of a residence at 20219 Greydale in Detroit, Michigan. Their purpose was to execute a search warrant for drugs allegedly contained in the residence. During the surveillance, Rashad arrived at the house in a 1988 Lincoln automobile. Approximately ten minutes after Rashad, who was carrying a briefcase, entered the house by means of a key, the officers executed the search warrant.

After securing the premises and its occupants (Rashad, a woman, and an infant), police brought a drug detection dog into the residence. The dog reacted to a locked storage area in the basement in which police discovered and seized approximately five kilograms of cocaine, including several kilogram-sized bricks of cocaine that were wrapped in green paper, as well as packing material and narcotics paraphernalia.

Inside Rashad's briefcase, officers found a driver's license bearing Rashad's photograph, but a different name and address. The briefcase also contained a key ring which held keys to the front entrance and drug storage area of the house, and to the Lincoln automobile in which Rashad had arrived.

In the course of executing the search warrant, the narcotics dog alerted officers to the interior of Rashad's automobile, which was parked in the driveway of the residence. When cocaine residue was found within it, the vehicle was impounded for subsequent forfeiture and remained in police custody.

Approximately one week later, an informant indicated to police that cocaine was stored in a compartment in the Lincoln. On September 19, police obtained a search warrant for the car, and on September 22 a detailed search led to the discovery of a compartment in a rear quarter panel. In the compartment, officers found a plastic bag containing approximately 4850 grams of cocaine, including four separate kilogram packages wrapped in green paper bearing the initials XELA. Officers also found several

bundles of heroin, a nine millimeter handgun, and a wallet containing Rashad's driver's license.

In April 1989, Rashad was tried before a jury on a charge of possession with intent to deliver greater than six hundred and fifty grams of cocaine in violation of Mich.Comp. Laws Ann. § 333.7401(2)(a)(i). That case arose out of the seizure of cocaine from the basement of the Greydale residence. The jury found Rashad guilty of a lesser included offense, possession of greater than six hundred fifty grams of cocaine, *see* Mich.Comp. Laws Ann. § 333.7403(2)(a)(i), and he was sentenced to forty to one hundred years imprisonment.

In an October bench trial, Rashad was tried on a charge of possession with intent to deliver over six hundred and fifty grams of cocaine (in violation of the same Michigan statute) in connection with the drugs which were found in the hidden compartment of the Lincoln. The defense moved to dismiss, claiming that the action was a successive prosecution for the same offense which violated the Double Jeopardy Clause of the Fifth Amendment. The court denied the motion, stating that the two prosecutions related to two separate transactions. At the close of the trial, Rashad was found guilty as charged, and sentenced to life imprisonment without the possibility of parole.

Rashad appealed this second conviction to the Michigan Court of Appeals on the ground that it violated the Double Jeopardy Clause of the Fifth Amendment. That court, in a June 1992 opinion, affirmed both convictions and specifically held that the trial for the cocaine found in the car was not barred by double jeopardy. In May of 1993, the Michigan Supreme Court denied Rashad's application for leave to appeal, with two judges dissenting.

In May 1994, Rashad filed a petition for the writ of habeas corpus in the United States District Court for the Eastern District of Michigan, claiming that his second conviction violated the Double Jeopardy Clause. The District Court accepted Rashad's argument and granted the writ of habeas corpus in November 1995. From that ruling, the State appeals.

## II.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *U.S. Const. amend. V.* The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The question we must decide is whether Rashad's trial and conviction for the cocaine seized from the car constitutes a successive prosecution for an offense for which he was already tried—possession with intent to distribute the cocaine found in the residence. Rashad claims that it does, on the ground that the cocaine seized from the house and the car are parts of the same criminal transaction. The State, in contrast, asserts that the two stashes represent two separate offenses, and thus that Rashad's second prosecution is not barred by double jeopardy.

The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. In a *Blockburger* case, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

Although it plays a prominent role in double jeopardy analysis, the *Blockburger* test is insufficient where, as here, the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transac-

tion. Indeed, multiple charges that satisfy the *Blockburger* standard, and thus may properly be joined in a single prosecution, may nevertheless violate double jeopardy if prosecuted successively. *Jordan v. Commonwealth of Virginia*, 653 F.2d 870, 873 (4th Cir.1980). As the Supreme Court has stated, "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown*, 432 U.S. at 166 n. 6, 97 S.Ct. at 2226. In *Jordan*, the Fourth Circuit articulated the need for a different standard:

> Successive prosecutions implicate a component of double jeopardy protection not implicated in single prosecutions of joined charges such as those involved in *Blockburger* ...: the protection against retrial itself. In this component double jeopardy ... insures that having once "run the gauntlet" of criminal trial ..., a person shall not be required to run essentially the same gauntlet again. It protects not only against multiple punishments but against multiple trials for the same offense.

*Jordan*, 653 F.2d at 873 (citing *United States v. Wilson*, 420 U.S. 332, 343–44, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975)).

■ The *Blockburger* standard, then, does not help us resolve a double jeopardy inquiry involving successive prosecutions. The concern in such a situation is whether a defendant is being prosecuted twice for the same act or transaction. The proper standard for determining if this has occurred, and thus if the two prosecutions violate double jeopardy, is to ask whether the actual evidence needed to convict the defendant in the first trial is the same as the evidence needed to obtain the second conviction. If the same evidence will serve for both convictions—irrespective of whether the convictions are under statutes that satisfy *Blockburger*'s "same elements" test—the second prosecution is barred by double jeopardy.[1] *See Jordan*, 653 F.2d at 873 (citing *Ex parte Nielsen*, 131 U.S. 176,

188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889)). Stated another way, successive prosecutions based on the same "fact situation" are barred by double jeopardy if the separate charges could have been joined and no significant additional fact was required in the second prosecution. *Id.* at 874.

■ Applying this standard to the present case demonstrates that Rashad's second prosecution did violate double jeopardy principles. Rashad's first prosecution charged him with possession with intent to distribute cocaine, and involved the drugs found in the Greydale residence. Rashad's second prosecution was also for possession with intent to distribute cocaine, and was based on the drugs found in the Lincoln automobile. The only additional fact required to convict on this second prosecution was the cocaine's location in the car. This fact is not "significant" under the circumstances, however, because the location of the drugs in the car does not indicate a separate crime from that indicated by the drugs in the house—possession with intent to distribute. Moreover, the separation of the charges into two trials has more to do with prosecutorial expediency—the opportunity to try Rashad twice for a single criminal transaction—than with substantive differences between Rashad's purportedly separate crimes. Such strategic maneuvering is forbidden by the Double Jeopardy Clause. As the *Jordan* court emphasized, "... It is well settled that double jeopardy protections may not be avoided by the simple expedient of exercising prosecutorial discretion to 'divid[e] a single crime into a series of temporal or spatial units.'" *Id.* at 875 (quoting *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225).

Here, the relevant fact situation involves Rashad's possession of a total of several kilograms of cocaine at the same time and place, and with the single unifying intent of distribution. Thus, Rashad's possession of cocaine in his home and in his automobile constituted

---

**1.** Judge Wellford's dissent states, "The significant factor to the majority was that both separate charges—possession for intent to distribute cocaine—were the same." This is not an accurate statement of our opinion. As set forth here, the focus of the successive prosecution test is whether the evidence needed to convict is the same in

both prosecutions. That the two prosecutions are based on the same statutory violation may reflect certain similarities in the two crimes, but such a fact does not determine whether the double jeopardy clause has been violated by a successive prosecution.

a single transaction. The seizure, and in part the discovery, of both quantities of the drug resulted from the same police confrontation with Rashad. Rashad's possession of both quantities occurred at the same time and place, and displayed a single intent and goal—distribution. Rashad's simultaneous constructive possession of two large quantities of cocaine, packaged in similar fashion and locked within secure compartments in property maintained by him, show that the relevant "fact situation" includes Rashad's possession of both caches of cocaine.

The State asserts, however, that the Michigan Court of Appeals correctly found that the two caches represented two separate transactions. From the existence of packaging materials, sifters, mixers and cutting agents in the home, the Michigan court concluded that the supply of cocaine located there was intended for "future distribution," whereas the cocaine in the car supported the "independent goal of transporting or delivering *that* cocaine to an unknown destination."

We cannot agree with this conclusion. Not only is record evidence as to the specific intent for each lot of cocaine lacking, but it makes for an extremely cramped view of the meaning of "possession" and "distribution" to argue, as the State does, that since the two lots could have been intended for distribution to different locations at different times, they were necessarily part of two distinct criminal transactions. At the time of the police action on September 7, 1988, there was no evidence to support the inference that the full supply of cocaine could not, and would not, be employed in a single distribution. At that point in time, Rashad possessed the full amount of cocaine with the same intent of distributing it at whatever future times, and in whatever amounts best suited him. Absent evidence of separate and distinct dedications of the two caches, his possession was a single, undivided offense.

Decisions from other circuits support our conclusion that Rashad was involved in a single criminal transaction. Generally, courts which have considered the issue have determined that separate convictions for possession of the same controlled substance will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose. See *United States v. Johnson,* 977 F.2d 1360, 1374 (10th Cir.1992), *cert. denied sub nom. Behrens v. United States,* 506 U.S. 1070, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993); *United States v. Maldonado,* 849 F.2d 522, 524 (11th Cir.1988); *United States v. Blakeney,* 753 F.2d 152, 154–55 (D.C.Cir.1985); *United States v. Palacios,* 835 F.2d 230, 233–34 (9th Cir.1987).

None of the legitimate bases for differentiating the stashes of cocaine in this case appear to exist. The entirety of the police confrontation with Rashad occurred during the execution of the search warrant for his residence. Both quantities were located at his home and both were seized at essentially the same time and place. There is no evidence in the record that either stash, or any specific amount of cocaine whatever, was intended by Rashad to be dedicated to a specific distribution. *Johnson,* 977 F.2d at 1374 (holding that in the absence of "demonstrated intent" that the two caches were for different purposes or transactions, their possession should have been charged in a single prosecution). Instead, the two stashes of cocaine were possessed, seized, and ultimately found as part of a continuous time sequence, and both possessions were unified by a single intent and goal of distribution. Thus, the reasoning set forth in *Johnson, Maldonado, Blakeney,* and *Palacios* supports the conclusion that Rashad's second prosecution violates the Double Jeopardy Clause.

By treating Rashad's behavior as two separate crimes simply because the two stashes of drugs were stored in different locations, the State has subjected Rashad to two trials for the same criminal transaction. We note that the cocaine at issue was stored in a rear quarter panel of Rashad's car at the time police initially searched and impounded the vehicle. A fully competent search of the car on the day of its seizure would have uncovered this second stash of cocaine at the same time that drugs were found in the Greydale residence. Thus, a proper and thorough police investigation would have revealed the evidence necessary to charge possession of all the cocaine in a single count or, at the

very least, in a single indictment. Instead, each of Rashad's two state court prosecutions charged him with approximately one-half of a single possessory crime. This is exactly what the Double Jeopardy Clause is designed to guard against. Were we not to find a double jeopardy violation on these facts, we would, in effect, be rewarding the State for its failure to discover evidence in a timely manner, as we would be allowing the State to benefit from this late discovery by prosecuting a single transaction as two separate crimes.

It is significant that even at the date the drugs were discovered in the Lincoln, the State had ample time to join the two charges in one trial, as Rashad's initial prosecution was still in its early stages. We have no doubt that had each stash of cocaine weighed five hundred grams, rather than five kilograms, the prosecution would have viewed the two stashes as part of a single transaction in order to reach the six hundred and fifty gram threshold required under Michigan law. That interpretation would have been correct, and a single indictment and prosecution would have afforded examination and punishment of the entirety of Rashad's conduct. The actual course chosen by the State was an impermissible effort to secure two bites at the apple at the expense of Rashad's constitutional right not to "be twice put in jeopardy" for the same offense. We therefore hold that Rashad's second prosecution violates the Double Jeopardy Clause, and affirm the district court's grant of the writ of habeas corpus.

WELLFORD, Circuit Judge, dissenting.

The facts in this case, as set out in Judge Martin's opinion, are not in dispute. In fact, in his brief Rashad specifically incorporated the defendant's version of the "Statement of the Case." The discovery of the very large quantity of cocaine and several bundles of heroin from the car, as well as a weapon and Rashad's identification, occurred some two weeks after discovery of about five kilos of cocaine in Rashad's basement storage area.

There was a separate indictment and conviction on the contraband drugs found pursuant to a search warrant in the home.

At issue in this appeal was the subsequent indictment and conviction of Rashad on the drugs that were eventually found in a separate stash in a hidden compartment of Rashad's car, which had actually been seized from his driveway during the search of the home.[1] Finding that "the location of the drugs in the car does not indicate a separate crime from that indicated by the drugs in the house," the majority concludes that the "second prosecution did violate double jeopardy principles." I disagree and, therefore, dissent.

The significant factor to the majority was that both separate charges—possession for intent to distribute cocaine—were the same. Yet, there are other important factors in the double jeopardy equation that are equally significant, in my view. The drugs were located in different places; some was located in the basement of defendant's home while the other was located a considerable distance away in defendant's car. The drugs were also located at different times—more than a two week interval occurred. Furthermore, two separate quantities of contraband were found by different police officers acting pursuant to separate search warrants at entirely different locations. There were even separate narcotics dogs involved in the two separate seizures. Also, a different informant alerted the police to the second cache of drugs. All of this indicates to this writer that the seizures and resulting charges were separate, distinct, and not inexorably interrelated.

More than that, I think it significant that the Michigan state courts also considered these same circumstances and factors and determined that there was no double jeopardy violation. The Michigan Court of Appeals found:

> [T]he cocaine confiscated from the Lincoln, supports the independent goal of transporting or delivering *that* cocaine to an

---

1. The police executing the search warrant for the home found a trace of cocaine only in the car following an alert by a narcotics dog. Some time later, an informant notified the police that there were narcotics in the automobile. A second search warrant authorized the subsequent successful car search.

unknown destination. Furthermore, it was never established that the cocaine found in the Lincoln was part of the same cocaine found in the house. The facts indicate that the defendant's possession of the cocaine in the home was simultaneous to his possession of the cocaine in the vehicle and not one unitary and continuous criminal episode. *[People v.] Jackson,* 153 Mich.App. [38] at 50, 394 N.W.2d 480 [(1986)]. Finally, the police did not get a search warrant for the Lincoln until an informant told police that the vehicle contained contraband.

*People v. Rashad,* No. 118136, 11877, 124060, at p. 4 (Mich.App. June 23, 1992). Accordingly, the Michigan court concluded that there was no "meaningful factual connection between the cocaine found in defendant's home and that found several days later in the quarter panel of defendant's vehicle," and thus no double jeopardy violation. I find myself entirely in agreement with the Michigan courts that denied relief to Rashad.

It seems clear to me that there were separate offenses in this case, discovered at different times and at different places. I find no basis to conclude, as does the majority, that what was involved here was "prosecutorial expediency" or "strategic maneuvering." *Jordan v. Commonwealth of Virginia,* 653 F.2d 870 (4th Cir.1980), relied upon by the majority is not even close on its facts to the instant case. Defendant Jordan committed the offenses in controversy "over a period of a few minutes"—one for obtaining a drug by forged prescription and one for possession of that drug. This was obviously "closely related conduct." *Id.* at 871, 872. Evidence used to convict on the first offense "would totally have sufficed to sustain the later felony conviction." *Id.* at 874. It was also, in *Jordan,* a "continuing offense." *Id.* at 875. The case under consideration in this appeal is vastly different.

*In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), also mentioned by the majority, is similarly of no help to Rashad's

cause, in my view. *Nielsen* involved two charges occurring *one day* apart: (1) unlawful cohabitation with more than one woman, and (2) adultery with one of the women involved in the first charge. The Supreme Court, on those entirely different facts, found a double jeopardy violation. That case simply cannot be a basis for finding a double jeopardy violation for separate caches of drugs, separate and divergent times and places of discovery, and by different police officers after an intervening informant's intelligence.

Nor is *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), really applicable to support the majority in this case. The two charges found to involve double jeopardy in *Brown* were stealing an automobile following conviction for the lesser-included offense of operating the same vehicle without the owner's consent. The majority, in the instant case, finds "the *Blockburger* test" to be "insufficient" on these facts, yet *Brown* relied principally upon *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932), as controlling. In *Brown,* joyriding and auto theft were "the same offense" involving the same car. I point to its language that "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or *have not been discovered* despite the exercise of due diligence." *Id.* at 169, n. 7, 97 S.Ct. at 2227, n. 7 (emphasis added). In our case, the additional facts—the additional large quantity of drugs in the car—had not been discovered until two weeks later after the police found cocaine in the house.

In sum, I find the authority cited by the majority for its position to be easily distinguishable and the cases from other circuits cited by the majority[2] to be supportive of this dissent. Accordingly, I would conclude that double jeopardy principles were not violated by the separate charges and convictions

---

**2.** *United States v. Johnson,* 977 F.2d 1360, 1374 (10th Cir.1992), *cert. denied sub nom. Behrens v. United States,* 506 U.S. 1070, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993); *United States v. Maldonado,* 849 F.2d 522, 524 (11th Cir.1988); *United States v. Blakeney,* 753 F.2d 152, 154–55 (D.C.Cir. 1985); *United States v. Palacios,* 835 F.2d 230, 233–34 (9th Cir.1987).

of defendant by state officials, and I would, therefore, deny the writ of habeas corpus.