**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Theodore S. FORMAN, Defendant–Appellant.**

**No. 98–1111.**

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1999.

Decided June 21, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 2, 1999.

David J. Debold, Assistant U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Plaintiff–Appellee.

Woodward C. Warrick (argued), Gross Pointe Farms, Michigan, Gary J. McInerney (briefed), Grand Rapids, Michigan, for Defendant–Appellant.

Before: RYAN, NORRIS, and COLE, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant Theodore S. Forman was charged in a one-count indictment with "convey[ing], dispos[ing] of, and convert[ing] to the use of others, records and things of value of the United States" in violation of 18 U.S.C. § 641. He was previously tried on a two-count indictment arising out of the same factual situation. Defendant moved to dismiss on three grounds: (1) the new indictment would place him in jeopardy twice for the same offense; (2) the government was estopped by the first jury's acquittal from challenging his defense of duress; and (3) the new indictment was the product of prosecutorial vindictiveness for defendant's success on appeal. The district court denied the motion to dismiss, and defendant brings this interlocutory appeal.

Because the only issue of precedential value arises with the first issue presented by defendant, it will be addressed below. The second and third issues raised by defendant are addressed in an unpublished appendix to this opinion.

## I.

During 1990, the Organized Crime Strike Force of the United States Attorney's Office in Detroit began an investigation of Vito Giacalone, a reputed leader of the Detroit mafia, and his attorney, Nathaniel C. Deday LaRene. An IRS agent prepared a Special Agent's Report (SAR)

concerning the case. Included in this 1200–page report were transcripts from grand jury proceedings; the names, addresses, and, in some cases, telephone numbers of witnesses who had testified before the grand jury; a summary of the government's investigation; a statement of the government's theory for the prosecution of the case; and a discussion of potential defenses to the prosecution.

At the time, potential criminal tax evasion prosecutions were submitted for approval to the Tax Division of the Justice Department in Washington, D.C., where defendant worked as a trial attorney. Sometime around March of 1992, the United States Attorney for the Eastern District of Michigan sent the case file for the Giacalone/LaRene investigation to the Tax Division for approval. The case was assigned to defendant's office mate.

In October 1992, federal agents conducting a separate investigation of Giacalone executed a search warrant at his office where they unexpectedly found a photocopy of the SAR for the Giacalone/LaRene case. In the course of an FBI investigation to determine how Giacalone had obtained a copy of the SAR, defendant's fingerprints were discovered on some of the photocopied pages. Confronted with the fingerprint evidence, defendant admitted that he had photocopied the SAR and delivered it to a reputed member of the Giacalone crime syndicate, but he asserted that he did so under duress because he believed that his father's life was in danger if he did not provide assistance to the Giacalone family.

A grand jury indicted defendant on two counts: one count of obstruction of justice in violation of 18 U.S.C. § 1503, and one count of criminal contempt in violation of 18 U.S.C. § 401(3). At trial, defendant raised the affirmative defense of duress. After a three-day trial, the jury returned a verdict of not guilty on the obstruction of justice count and guilty on the criminal contempt count. This court reversed the conviction for contempt. *See United States v. Forman,* 71 F.3d 1214 (6th Cir. 1995).

The government then indicted defendant under a new theory, charging him with theft of government property in violation of 18 U.S.C. § 641. Defendant moved to dismiss the second indictment on the three grounds mentioned above. This interlocutory appeal followed the denial of the motion.

## II.

Defendant argues that because he was previously tried for offenses that arose from the same facts as the present indictment, the second indictment is barred by the Double Jeopardy Clause of the Fifth Amendment. As this issue involves solely a question of law, we will review the district court's denial of defendant's motion to dismiss de novo. *See United States v. Gantley,* 172 F.3d 422, 427 (6th Cir.1999).

■ Defendant concedes that the general test for double jeopardy challenges is the "same elements" test from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That test asks whether each offense contains an element not contained in the other. A defendant will be considered placed in double jeopardy only if "every violation of one statute entails a violation of another." *United States v. Benton,* 852 F.2d 1456, 1465 (6th Cir.1988) (citation and internal quotation marks omitted).

■ All the elements of the present theft and conversion charge are not subsumed by either previous charge of obstruction of justice or criminal contempt. The obstruction charge required proof that defendant had knowledge of a pending judicial proceeding and acted with the intent of corrupting the proceeding. 18 U.S.C. § 1503; *United States v. Monus,* 128 F.3d 376, 387 (6th Cir.1997), *cert. denied,* — U.S. ——, 119 S.Ct. 67, 142 L.Ed.2d 53 (1998). The contempt charge, in defendant's case, required proof that he dis-

obeyed Fed.R.Crim.P. 6(e). *Forman,* 71 F.3d at 1217. The present charge requires proof that defendant (1) knowingly (2) stole or converted to the use of another (3) something of value of the United States. 18 U.S.C. § 641; *United States v. Sanderson,* 966 F.2d 184, 188 (6th Cir. 1992). Clearly, all the elements of the present charge are not subsumed by either previous charge and, under the "same elements" test, defendant is not placed in double jeopardy.

■ However, defendant contends that the "same elements" test should not apply to his situation. He correctly points out that for a brief time the Supreme Court favored a different test. In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court held that in successive prosecution cases, a violation of the Double Jeopardy Clause occurs where the "same conduct" alleged in the first prosecution would have to be proven in the second prosecution. Defendant argues that the government here would have to prove the exact same conduct in this second prosecution as it had to in the first. While he acknowledges that the "same conduct" test of *Grady* was rejected in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), he maintains that *Dixon* leaves open the question of how to evaluate successive prosecution cases.

Defendant's argument is unconvincing because *Dixon* itself, while disavowing the "same evidence" test, concerned successive prosecutions for the same conduct. Defendant cites a post-*Dixon* Sixth Circuit decision for the continuing validity of the "same evidence" test. *Rashad v. Burt,* 108 F.3d 677 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 850, 139 L.Ed.2d 751 (1998). While acknowledging the traditional test for double jeopardy is the "same elements" test, the panel in *Rashad* determined that test does not apply in cases involving successive prosecution for conduct "that may constitute the same act or transaction." *Id.* at 679.

The concern in such a situation is whether a defendant is being prosecuted twice for the same act or transaction. The proper standard for determining if this has occurred, and thus if the two prosecutions violate double jeopardy, is to ask whether the actual evidence needed to convict the defendant in the first trial is the same as the evidence needed to obtain the second conviction. If the same evidence will serve for both convictions—irrespective of whether the convictions are under statutes that satisfy *Blockburger*'s "same elements" test— the second prosecution is barred by double jeopardy.

*Id.* at 680 (footnote omitted).

While the quoted language may imply support for defendant's position, when read in light of *Dixon* and considering the factual circumstances underlying the case, we read *Rashad* much more narrowly. In *Rashad,* the habeas corpus petitioner's arresting officers discovered cocaine in his house and in his car a week later, which had been impounded since the search. In separate proceedings, Rashad was tried in state court based on the cocaine found in the different locations. He was tried both times for the same offense: possession with intent to deliver cocaine.

The issue in *Rashad* was whether the defendant had committed one as opposed to two discrete violations of the same statute, not whether the defendant was charged twice for the same violation. Put differently, the issue in *Rashad* was whether the possession of cocaine in defendant's home and car constituted one or two units of conduct. Here, as in *Dixon,* the issue is whether defendant has been charged twice for the same or different crimes. There is no question about how many units of conduct are involved. The court in *Rashad* determined that the cocaine found in the defendant's residence and in his car should have been treated as a single unit of conduct because the circumstances involved "Rashad's possession of . . . cocaine at the same time and place,

and with the single unifying intent of distribution. Thus, Rashad's possession of cocaine in his home and in his automobile constituted a single transaction." 108 F.3d at 680–81. Although some of the language in *Rashad* would seem to endorse the "same evidence" test outside of situations where the concern is whether the prosecution has impermissibly divided the defendant's conduct so that it may bring repeated prosecutions under the same statute, it is clear from the *Rashad* opinion that the referenced language is to be limited in its application to circumstances such as were present in that case. We cannot, of course, overrule *Dixon* and *Rashad* is likewise limited by that holding. In fact, the *Rashad* court failed even to mention *Dixon*, a clear indication that the court recognized that the two cases involved different issues. *See United States v. Williams*, 155 F.3d 418, 420–21 (4th Cir. 1998) (rejecting *Rashad* as inconsistent with *Dixon* and other Supreme Court decisions).

### III.

For the reasons stated in this opinion and in the unpublished appendix to this opinion, the judgment of the district court is **affirmed**.