NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0492n.06

Case No. 22-6061

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="10"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MITCHELL LEON FARKAS,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Dec 01, 2023
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

O P I N I O N

**Before: COLE, GILMAN, and LARSEN, Circuit Judges.**

The court issued a PER CURIAM opinion. LARSEN, J. (pp. 10–12), delivered a separate concurring opinion.

PER CURIAM. A jury convicted Mitchell Farkas of attempted murder, assault with a dangerous weapon, and associated racketeering offenses based on Farkas's role in a stabbing at a federal prison conducted by members of the Aryan Circle. The district court sentenced Farkas to thirty years' imprisonment. Farkas argues that there was insufficient evidence to support his convictions, that the jury should not have heard certain evidence, and that his sentence is in violation of double jeopardy and procedurally unreasonable. For the following reasons, we affirm.

I.

In 2018, Mitchell Farkas and Jonathan Gober were incarcerated at the United States Penitentiary Big Sandy, a high-security federal prison in Kentucky. Farkas and Gober were members of the Aryan Circle, a gang active in the federal prison system. The Aryan Circle

required its members to carry out stabbings when ordered. The member would potentially become the target if he did not execute the order.

A.S. was a prospective Aryan Circle member at USP Big Sandy. A.S. was "getting investigated" by the Aryan Circle to determine if he would be "validated" as a full member. (Trial Tr., R. 451, PageID 5058.) The Aryan Circle discovered that A.S. previously made a statement to law enforcement and was therefore "no good," "no longer Aryan Circle," and "had to go." (*Id.*)

Aryan Circle leadership assigned Farkas and Gober to attack A.S. While exercising at the USP Big Sandy gymnasium, Gober suddenly grabbed A.S.'s legs. While Gober held A.S. down, Farkas stabbed A.S. in the head repeatedly for approximately a minute. (Sentencing Hr'g Tr., R. 463, PageID 5286; Gov't Ex. 31, Dkt.. 37, Video.) When A.S. attempted to break free, Farkas yelled, "Get his legs." (Trial Tr., R. 447, PageID 4113.) The attack was captured by surveillance video. (Trial Tr., R. 451, PageID 4841; Gov't Ex. 31, Dkt. 37, Video.) A.S. permanently lost vision in his left eye as a result of the stabbing. After the attack, Gober gave a "rundown" of the stabbing to his Aryan Circle superior, who relayed the report up the chain of command. (Trial Tr., R. 447. PageID 4155–56, 4158–59.)

At trial, A.S. identified Farkas as his assailant. Two prison officials identified Farkas based on the surveillance video footage. A prison investigator testified that Farkas was discovered with a "red unknown substance," apparently blood, on his hands and clothes after the incident. (Trial Tr., R. 447, PageID 4005–06.) A photograph of a "plastic homemade weapon" recovered near the scene was displayed for the jury. (*Id.* at PageID 4064; Gov't Ex. 29, Dkt. 37, p. 4.)

Robert Johnson, a lieutenant with the Bureau of Prisons, testified that he had investigated prior attacks by Aryan Circle members, including a stabbing at USP Lewisburg in 2014 and stabbings at USP Big Sandy in 2014, 2017, and 2019. (Trial Tr., R. 451, PageID 4834–35, 4837–

38.)  Robert Bodin, an agent with the Bureau of Alcohol, Tobacco, and Firearms, testified that he had investigated an Aryan Circle related murder in Louisiana in 2016 and Aryan Circle stabbings at USP Talladega in 2010, USP Pollack in 2014, and USP Big Sandy in 2014.  (Trial Tr., R. 450, PageID 4684, 4701–02, 4730–31.)  Bodin clarified that Farkas was not involved in these incidents.

Johnson testified about how dangerous weapons can be made in prison.  Over Farkas's objection, the district court admitted a photograph depicting weapons like the ones Johnson described.  (Gov't Ex. 28, Dkt. 37, p. 3.)  The court instructed the jury to consider the photograph "only for the purpose of visualizing the testimony" and emphasized that "there's no allegation that any of these items have any connection to Mr. Farkas, [nor] that Mr. Farkas was in any way associated with these particular weapons."  (Trial Tr., R. 450, PageID 4759–60.)

The jury convicted Farkas on four counts: (1) attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5), (2) assault in aid of racketeering under 18 U.S.C. § 1959(a)(3), (3) attempted murder under 18 U.S.C. § 1113, and (4) assault with a dangerous weapon with intent to do bodily harm under 18 U.S.C. § 113(a)(3).  The assault in aid of racketeering count was dismissed prior to sentencing.  The district court calculated Farkas's offense level to be 39 under the advisory Sentencing Guidelines, including a two-level enhancement for physical restraint of the victim under § 3A1.3.  This calculation resulted in a Guidelines range of 30 years to life, with statutory maximums setting the upper bound at 40 years.  An offense level of 37 would have led to the same Guidelines range.  The court sentenced Farkas to a combined 30 years' imprisonment: 10 years for the attempted murder in aid of racketeering count, 20 years consecutive for attempted murder under § 1113, and 10 years concurrent for assault with a dangerous weapon under § 113(a)(3).  (Judgment, R. 420, PageID 2353–54.)  The court sentenced Farkas at the low end of

the Guidelines range only to avoid disparity with co-defendants who pleaded guilty. (Sentencing Hr'g Tr., R. 463, PageID 5322–23.)

II.

A.

Farkas argues that there is insufficient evidence to support his convictions. He contends that the state failed to prove that he was the person who stabbed A.S., which was necessary for all four counts. *See* 18 U.S.C. § 1959(a)(3, 5); 18 U.S.C. § 1113; 18 U.S.C. § 113(a)(3). He also argues that the state failed to prove that he acted with the purpose of maintaining his position in the Aryan Circle. Proof of this purpose is required for the racketeering convictions. *United States v. Hackett*, 762 F.3d 493, 500 (6th Cir. 2014). Evidence is insufficient to prove an element if, when viewed in the light most favorable to the prosecution, no rational juror would find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317–19 (1979).

There is sufficient evidence that Farkas stabbed A.S. First, A.S. identified Farkas at trial as the person who stabbed him. Although A.S. initially declined to identify Farkas to investigators, the jury was entitled to believe A.S.'s trial testimony despite his inconsistent statements. *See United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005). Second, based on the prison investigator's testimony, a rational juror could infer that Farkas had A.S.'s blood on his hands just after the stabbing. Finally, the stabbing was captured on video, and prison staff familiar with Farkas identified him as the attacker based on the footage.

There is also sufficient evidence that Farkas acted to maintain his position in the Aryan Circle. Farkas does not contest his membership in the organization. (Appellant Br. 17.) As discussed above, there is sufficient evidence to show that Farkas stabbed A.S. Testimony and other evidence indicated that the Aryan Circle required members to carry out stabbings when

ordered to do so or potentially become targets themselves. Witnesses testified that Aryan Circle leadership selected Farkas and Gober to stab A.S. and that Gober's report of the completed stabbing was relayed back up the chain of command. Letters sent between prisons corroborated this testimony. (*E.g.*, Trial Tr., R. 447, PageID 4158–59.) Based on this evidence, a rational juror could infer that Farkas stabbed A.S. to maintain his position in the Aryan Circle. *See Hackett*, 762 F.3d at 500–01.

B.

Farkas next argues the district court improperly admitted evidence that should have been excluded as unfairly prejudicial. Evidence is relevant when it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. But relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, [or] misleading the jury[.]" Fed. R. Evid. 403. We generally review evidentiary rulings under the abuse-of-discretion standard.[1] *United States v. Gibbs*, 506 F.3d 479, 484 (6th Cir. 2007).

Farkas first argues that the district court erred by admitting Johnson's and Bodin's testimony about stabbings and murders committed by other members of the Aryan Circle. According to Farkas, this testimony was unfairly prejudicial because he did not play a role in those crimes, and the testimony's "spillover effect" could lead a juror to convict him for stabbing A.S. (Appellant Br. 26.) Two charges against Farkas—attempted murder in aid of racketeering and assault in aid of racketeering—required the government to prove that the Aryan Circle was engaged in racketeering activity. 18 U.S.C. § 1959(a)(5); 18 U.S.C. § 1959(a)(3). Racketeering

---

[1] The government argues that we should apply the plain-error standard of review to Farkas's challenge to the testimony about prior stabbings because Farkas did not properly renew his objection at trial. Because the challenge fails under either, we will review under the more lenient abuse-of-discretion standard.

activity includes "any act or threat involving murder." 18 U.S.C. § 1959(b)(1); 18 U.S.C. § 1961(1). Testimony about these prior crimes is probative as to whether the Aryan Circle was engaged in racketeering activity. *See United States v. Rios*, 830 F.3d 403, 424 (6th Cir. 2016).

Further, Bodin testified that he was not aware of Farkas's involvement in any of the stabbings or murders that Bodin investigated, thus limiting the danger of misleading the jury. The danger of unfair prejudice is further reduced because the testimony did not associate Farkas with acts more violent than those he was accused of committing. *See id.* Moreover, each officer's testimony consisted of unelaborated statements about his knowledge of the Aryan Circle's involvement in the prior stabbings. In contrast, the jury saw video footage and heard more graphic testimony about the stabbing of A.S.

Second, Farkas challenges the admission of the photograph depicting three weapons that were made in prison by other people, arguing that the photograph was substantially more prejudicial than probative because the weapons were the same type used in the attack on A.S., but had no connection to the stabbing. To prove the assault with a dangerous weapon charge, the government was required to show that Farkas used a dangerous weapon. 18 U.S.C. § 113(a)(3). The district court admitted the photograph as a visual aid to accompany Johnson's testimony about dangerous prison-made weapons. As an illustration of Johnson's testimony, the photograph is probative as to whether the weapon found at the scene was also dangerous.

Any danger of unfair prejudice presented by the photograph was reduced by the district court's limiting instruction, which made explicit that Farkas was not associated with the weapons in the photograph. *See United States v. Smith*, 70 F.4th 348, 353 (6th Cir. 2023). Additionally, the weapons depicted in the photograph are no larger and no more menacing than the homemade weapon recovered from the scene of the crime, which was also displayed for the jury. (*Compare*

Gov't Ex. 28, Dkt. 37, p. 3, *with* Gov't Ex. 29, Dkt. 37, p. 4); *see Rios*, 830 F.3d at 424. Accordingly, the district court did not abuse its discretion by admitting the photograph because the photograph helped prove an element of a charged offense and any danger of unfair prejudice was mitigated. *See United States v. Gardner*, 887 F.3d 780, 784–85 (6th Cir. 2018).

C.

Farkas contends that he was sentenced twice for the same act, in violation of the double-jeopardy clause of the Fifth Amendment as interpreted in *Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997). (Appellant Br. 29.) We review this constitutional question de novo. *Costo v. United States*, 904 F.2d 344, 346 (6th Cir. 1990). Farkas's argument is without merit. *Rashad* applies only to double-jeopardy violations based on "successive prosecutions." *Rashad*, 108 F.3d at 679. It has no application to cases like Farkas's where the concern is "multiple charges under separate statutes," *id.*, which are governed by the test in *Blockburger v. United States* alone. *See United States v. Ledbetter*, 929 F.3d 338, 366 (6th Cir. 2019). Under *Blockburger*, two crimes are not the same if each requires an element not in the other. 284 U.S. 299, 304 (1932); *United States v. Dixon*, 509 U.S. 688, 696 (1993).

Here, as Farkas admits in his brief, "applying the *Blockburger* test, the latter counts [attempted murder under 18 U.S.C. § 1113 and assault with a dangerous weapon with intent to do bodily harm under 18 U.S.C. § 113(a)(3)] do have elements not contained [in] the other." (Appellant Br. 30.) Attempted murder requires intent to kill. *See* 18 U.S.C. § 1113. The assault offense requires use of a dangerous weapon. 18 U.S.C. § 113(a)(3). The offenses are separate, so the sentencing here does not violate the Fifth Amendment. *Rutledge v. United States*, 517 U.S. 292, 297 (1996).

D.

Lastly, Farkas argues that his sentence is procedurally unreasonable. Specifically, Farkas challenges the two-level enhancement for physical restraint of the victim that the district court applied under Sentencing Guidelines § 3A1.3. We review de novo whether the district court properly applied the Guidelines provision to the facts of the case. *United States v. Ziesel*, 38 F.4th 512, 515 (6th Cir. 2022). We review the district court's factual findings under the clear-error standard. *United States v. Coleman*, 664 F.2d 1047, 1048 (6th Cir. 2012).

The district court found that Gober held A.S. down for a full minute while Farkas stabbed A.S. (Sentencing Hr'g Tr., R. 463, PageID 5286.) This finding is supported by video evidence. Under the Guidelines, Gober's actions are attributed to Farkas because they acted in concert. *See* U.S.S.G. § 1B1.3(a)(1)(A–B).

Farkas argues that these facts do not support the physical-restraint enhancement because A.S. "was not bound or tied," "[a]ny restraint was part of the stabbing" as A.S. was "not restrained for a length of time as if he was tied up or bound," and he "got free." (Appellant Br. 33–34.)

It makes no difference that A.S. was restrained by Gober rather than by ropes. A rope or other device is not required for the enhancement to apply. *Coleman*, 664 F.3d at 1049 (citing *United States v. Faulkner*, 188 F.3d 509 (6th Cir. 1999) (unpublished)).

The restraint here was not "a brief holding as part of stabbing." *United States v. Mikalajunas*, 936 F.2d 153, 156 (4th Cir. 1991). The assault had two components: Farkas stabbed A.S. while Gober held A.S. down. *Id.* (noting that the enhancement may apply if "one person restrained the victim while another stabbed him"). The stabbing was more severe because A.S. could not protect himself. Gober held A.S. long enough for Farkas to stab him in the head repeatedly, leading to permanent loss of vision in his left eye. This is enough for the enhancement.

*See Coleman*, 664 F.3d at 1049–51 (rejecting a requirement for a "sustained focus" on the victim).

Finally, even if A.S. did break free, he did so only after being restrained for a full minute. That he escaped rather than being released or freed does not negate that he was held. The district court therefore did not err when it applied the two-level physical-restraint enhancement.

III.

For the foregoing reasons, we affirm.

LARSEN, Circuit Judge, concurring. I join the per curiam opinion in full but write to highlight one aspect of Farkas's double-jeopardy claim. With respect to that issue, the opinion correctly concludes that *Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997) does not help Farkas. On *Rashad*'s own terms, and under our later caselaw, *Rashad* applies "only to double-jeopardy violations based on 'successive prosecutions.'" Op. at 7 (quoting *Rashad*, 108 F.3d at 679). "It has no application to cases like Farkas's where the concern is 'multiple charges under separate statutes,' [*Rashad*, 108 F.3d at 679,] which are governed by the test in *Blockburger v. United States* alone." *Id*. at 7 (citing *United States v. Ledbetter*, 929 F.3d 338, 366 (6th Cir. 2019)). That reasoning is enough to resolve Farkas's claim.

But it bears pointing out that, even when a double-jeopardy challenge *is* based on successive prosecutions, *Blockburger* is still the controlling test. The Supreme Court made that clear three years before *Rashad*, in *Dixon v. United States*, 509 U.S. 688, 703–09 (1993). *Dixon* rejected the notion of a "'successive prosecution' strand of the Double Jeopardy Clause that has a different meaning from its supposed 'successive punishment' strand." *Id.* at 704. And it overruled the Supreme Court's prior caselaw, which had layered a "same-conduct" test on top of *Blockburger*. *Id.* at 711. Indeed, *Dixon* expressly repudiated as "the purest dictum" the language found in a footnote in *Brown v. Ohio*, saying that "[t]he *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Id.* at 706 (alteration in original) (quoting *Brown v. Ohio*, 432 U.S. 161, 166–67 n.6 (1977)). Yet that very language from *Brown* would later become the centerpiece of the *Rashad* decision. *See Rashad*, 108 F.3d at 680.

Our cases have recognized *Rashad*'s error. In *United States v. Forman*, 180 F.3d 766 (6th Cir. 1999) and again in *Murr v. United States*, 200 F.3d 895 (6th Cir. 2000), we explained that, as

- 10 -

a measure of double-jeopardy protection, *Rashad*'s reasoning conflicts with *Dixon*. And while we have not expressly overruled it, our subsequent cases have "read *Rashad* much more narrowly." *Forman*, 180 F.3d at 769. Indeed, *Rashad*'s holding "has repeatedly been limited by this court to the particular facts of that case." *Ledbetter*, 929 F.3d at 366.

In *Rashad*, officers found cocaine in Rashad's house and in his car. 108 F.3d at 678. He was tried separately in state court for possessing the cocaine discovered in each location. *Id.* at 679. This court held that the state had violated Rashad's double-jeopardy rights because, "irrespective of" "*Blockburger*'s 'same elements' test," Rashad had been "prosecuted twice for the same act or transaction," or the "same fact situation," and the "same evidence . . . serve[d] for both convictions." *Id.* at 680 (internal quotation marks omitted).

But *Rashad* failed to acknowledge the "Supreme Court's express rejection of the 'same evidence' test in *Dixon*." *Murr*, 200 F.3d at 901.[1] Recognizing that this court must follow *Dixon*, and that "*Rashad* is likewise limited by that holding," we clarified that *Rashad* is to be read "narrowly." *Forman*, 180 F.3d at 769–70. The question in *Rashad*, we explained, was not really whether the defendant had been tried "twice for the same violation," or offense. *Id*. at 769. That question, *Dixon* tells us, is to be answered using the *Blockburger* test. *Dixon*, 509 U.S. at 696. Instead, the question *Rashad* answered was whether the defendant, by possessing cocaine simultaneously in his car and in his house, "had committed one as opposed to two discrete violations of the same statute." *Forman*, 180 F.3d at 769. *Rashad*, in other words, was about "how

---

[1] *Murr* might have been more precise to say that *Rashad* failed to acknowledge the "Supreme Court's [*implicit*] rejection of the 'same evidence' test in *Dixon*." *Murr*, 200 F.3d at 901. But this is of no real consequence. *Dixon* rejected the "same-conduct" test announced in *Grady v. Corbin*, 495 U.S. 508 (1990). 509 U.S. at 711. *Grady* had layered the "same-conduct" test on top of *Blockburger*'s "same elements" test in "successive prosecution" cases. But even *Grady* expressly disclaimed that it was going so far as to adopt a "same evidence" or "actual evidence" test. *Grady*, 495 U.S. at 521. And the Supreme Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." *Garrett v. United States*, 471 U.S. 773, 790 (1985).

many units of" cocaine possession Rashad committed through his simultaneous possession. *Id.* It does not stand for the proposition that the Double Jeopardy Clause forbids successive prosecutions for any conduct arising out of the "same act or transaction" or supported by the "same evidence." *Id.* Despite "language in *Rashad* [that] would seem to endorse" such tests, we recognized in *Forman* that such a reading would conflict with *Dixon*. *Id*. at 770. And so we limited *Rashad*'s "application to circumstances such as were present in that case." *Id. See also United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998) (rejecting *Rashad* as being "inconsistent with a wealth of Supreme Court authority" and overruling prior 4th Circuit authority upon which *Rashad* relied).

With this clarification of *Rashad*'s limited scope, I join the per curiam opinion in full.