RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-6147

ABDULLAHI FARAH,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:12-cr-00196-1—Kevin H. Sharp, District Judge.

Argued: May 7, 2014

Decided and Filed: September 11, 2014

Before: COLE, Chief Judge; MOORE, Circuit Judge; DRAIN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** James Mackler, BONE MCALLESTER NORTON PLLC, Nashville, Tennessee, for Appellant. Van S. Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** James Mackler, BONE MCALLESTER NORTON PLLC, Nashville, Tennessee, for Appellant. Van S. Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

DRAIN, D.J., delivered the opinion of the court, in which COLE, C.J., joined, and MOORE, J., joined in part. MOORE, J. (pp. 26–33), delivered a separate opinion dissenting from Part III.A. of the majority's opinion.

_____

[*] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

—————————————

## OPINION

—————————————

## I.

GERSHWIN A. DRAIN, District Judge. Defendant Abdullahi Farah was convicted after a two-day jury trial of violating 18 U.S.C. § 401(3), for willfully disobeying an order requiring his testimony by deposition for use in a separate criminal prosecution and for violating 18 U.S.C. § 1591(d), which prohibits the obstruction, or the attempt to obstruct the enforcement of §1591(a), a child sex trafficking statute. Farah's conviction stems from his refusal to testify in the ongoing criminal prosecution of thirty gang members of Somalian descent charged in the United States District Court for the Middle District of Tennessee with several conspiracies including sex trafficking of minors, interstate transportation of stolen goods and other offenses.[1]

Because we conclude Farah's conviction for violating 18 U.S.C. § 401(3) violates the Double Jeopardy Clause and the rule announced in *Yates v. United States*, 355 U.S. 66, 78 S. Ct. 128, 2 L. Ed. 2d 95 (1957), we VACATE his judgment of conviction on that count. However, Farah's Double Jeopardy rights were only violated in part because he was also convicted of obstructing or attempting to obstruct the child sex trafficking laws, thus his conviction on that count passes the "same elements" test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). We further find that none of Farah's remaining claims challenging his conviction for violating 18 U.S.C. § 1591(d) have merit, thus his judgment of conviction as to that count is AFFIRMED.

—————————————

[1] *United States v. Abdifitah Adan*, 3:10-260.

## II.

Farah has been a member of the Somali Outlaws gang for nearly a decade, although during the course of the proceedings below, he has since renounced his membership and affiliation with the gang. In 2010, while detained in immigration custody in Ramsey County, Minnesota,[2] Farah was approached by the Government about an incident occurring in Nashville. Farah ultimately agreed to offer his assistance with respect to the Government's investigation. Farah believed that in exchange for his cooperation he would receive immunity from prosecution, reversal of the revocation of his work permit, help obtaining his citizenship and release from custody.

Farah was granted transactional immunity and testified before the grand jury on three separate occasions. He also assisted with the identification of gang members and provided reliable information concerning the locations of many of the *Adan* defendants at the time the Government filed the charges and brought the *Adan* defendants into custody in the fall of 2010.

Farah claims that after the *Adan* indictment was filed, other gang members in the community began to suspect that he was supplying information to the Government because he was not indicted. He claims he was assaulted twice during the latter half of 2011. The first time he claims he was pistol whipped and beaten by four masked men near his home. The men threatened to kill him and harm his family. While Farah was in constant contact with Government agents during this time, when questioned by an agent about a cut above his eye resulting from the purported assault, Farah claimed he obtained the injury while playing basketball. He also claims he was assaulted right before the Christmas holiday that same year.

The *Adan* case was severed into separate trials by the trial court, with the first trial commencing in March of 2012. Farah was arrested on a material witness warrant a month before the commencement of the trial. A detention hearing was held before a

---

[2]Farah has several prior convictions and removal proceedings have been initiated.

magistrate judge who determined that there were no conditions or combination of conditions that could reasonably assure Farah's appearance and ordered his detention as a material witness in the *Adan* case. The district judge presiding over the *Adan* case recused himself from all material witness proceedings dealing with Farah and a separate case was opened.[3]

On April 18, 2012, Farah made his appearance before a district judge based on the Government's "motion for a hearing related to witness's refusal to testify." The Government indicated that it had reached the point in the *Adan* trial for Farah's testimony and his "anticipated testimony would relate to the sex trafficking of [the] individual known as Jane Doe 2, as well as relating to information known about the venture, which is a requirement under 18 U.S.C. § 1591(a)(2) . . . [h]e would also have the information about . . . identifying particular defendants' voices. And that's it in a nutshell, Your Honor, as to materiality." Farah, who was represented by counsel at the hearing, informed the district judge that he refused to testify.

> EXAMINATION BY THE COURT:
>
> Q:     Mr. Farah, the government has filed a motion asking me to compel you to testify in the *Adan* case that is being tried before Judge Haynes down the hall. I first want to establish whether you are willing to testify in that case. Are you willing to testify in that case?
>
> A:     No, Your Honor.

Farah explained to the Court that he was refusing to testify because: "I was coercion and I was pressured to testify from the beginning. It wasn't my choice. I was either threatened to go to jail or be indicted upon the case or either testify." Farah claimed the Government had lied to him and his safety was in jeopardy, however he failed to inform the court that he was twice assaulted by gang members and his family had been threatened in the preceding year.

---

[3]The district judge recused himself because his son worked at the same law firm that Farah's defense counsel worked.

The district judge concluded that Farah failed to establish just cause for his refusal to testify, ordered him to testify for the prosecution in the ongoing *Adan* trial, and found him in civil contempt. He also ordered Farah's detention for the remainder of the trial unless Farah purged himself of the contempt by testifying. The next day, another hearing was held to determine whether Farah would testify, but Farah indicated that his position had not changed. The district judge reserved consideration of the Government's oral request to find Farah in criminal contempt until the conclusion of the trial, and again informed Farah that the civil contempt could be purged upon his decision to testify. Upon the conclusion of the trial in *Adan*,[4] the district judge set a trial date for the Government's motion to hold Farah in criminal contempt.

A June 2012 bench trial was held and Farah was found guilty of criminal contempt. At the trial, Farah testified about the two assaults in 2011, however the district judge had serious doubts about his credibility particularly in light of his conduct just prior to his arrest. The district judge concluded that:

> [T]he Court clearly ordered the defendant to testify. It was an ongoing trial. He was to be called as a witness on the day that we had the initial hearing, the 18th of April. And the defendant was clearly ordered to testify, and he refused. So he had the benefit of a clear and definite order, and he knew of the order.

Sentencing was held on July 3, 2012. The district judge began by noting that the statutory maximum for criminal contempt was six-months imprisonment, but ultimately determined the statutory maximum was "not called for" under the circumstances because:

> [I]f Mr. Farah repeats his conduct of failing to testify in legal proceedings, the Court wants to have the flexibility to impose a graduated sentence, meaning for there to be additional possibility of more

---

[4]The jury returned guilty verdicts as to 3 defendants and 6 defendants were acquitted. The district judge later vacated the convictions and granted new trials for the three convicted defendants. As of the date of this opinion, no more trials have been held in this matter. The record reveals 3-6 trials will be held as to the remaining *Adan* defendants. A trial set for October of 2013 did not take place and there have been no further trials scheduled. Since the first trial, five defendants have entered guilty pleas to counts unrelated to the sex trafficking counts and received sentences ranging from time served to forty-eight-months imprisonment.

punishment if we are simply here in a few months doing this same proceeding.

Farah's counsel lodged an objection to this portion of the district judge's ruling:

> [I]t appears the Court is at least considering the possibility that if Mr. Farah was charged with and tried for an additional contempt charge for refusing to testify, he could be again convicted. It is now and will be my position that that would be double jeopardy. Mr. Farah has said he will not testify against the gang members. And the fact that the government has divided this case into multiple cases[5] doesn't change the fact that he has committed one act of contempt and that is the only act of contempt. He should not be held in multiple contempts because of the government's decision to bifurcate the trials. I am making that objection now because I raised it earlier.

While Farah was serving his four month sentence, his attorney filed a motion for review of the order detaining him as a material witness requesting that Farah be released after the conclusion of his sentence for criminal contempt, or in early October 2012, because further detention at that point implicated constitutional considerations because none of the remaining trials had been set in the *Adan* case. A hearing was held before the district judge on August 23, 2012.

At the hearing, the district judge began by stating the procedural posture of the case:

> Farah[] has filed a motion for the review of the detention order of the magistrate judge, . . . Docket Number 19 entered on May 16, 2012. It in turn relies on the detention order in Case Number 12-2029. And just to try to keep things clear, the detention order in the Case 3:12-85 was a detention for Mr. Farah as a defendant in the criminal case dealing with criminal contempt. But that order relies on the reasons stated for detaining Mr. Farah in Case Number 12-2029 as a material witness. So it is all interrelated.

---

[5]The record is not clear as to whether the Government requested that the trial proceed in stages, or whether the district judge determined that multiple trials were necessary for court administrative purposes, or whether both desired to resolve the *Adan* prosecution in separate trials.

Defense counsel argued that once Farah served the remaining term of his sentence for criminal contempt, he should be released because continued confinement as a material witness was unjust under the circumstances:

> [O]nce he serves his remaining two months [he] will be arguably being held in detention with no trial date set, no idea when trial dates will be set, and no idea how many trials he will be asked to testify in, which could potentially go on for years. This is all in light of the fact that he's already told this Court and is suffering the consequences of it that he will not testify against the Somali gang, meaning he won't be providing testimony in any of those upcoming trials.

The district judge inquired if a deposition could be taken pursuant to 18 U.S.C. § 3144. Defense counsel responded that, while he raised the subject of a deposition in his motion, he inartfully did so and meant to argue that such an endeavor would be futile because Farah would not change his stance regarding testifying in the *Adan* matter. The Government requested that Farah's testimony by deposition be ordered by the court, however neither the Government nor the district judge addressed the requirements for ordering a deposition pursuant to 18 U.S.C. § 3144. The district judge took the matter under advisement and later granted the request in an August 23, 2012 summary order.

The deposition was held at the courthouse on September 12, 2012, and the *Adan* defendants, and their counsel, were either present or waived their presence. At the deposition, the Government began by stating the purpose of the deposition was for use "at trial in relation to the matter of *United States v. Adan* 3:10-00260." The Government proceeded to ask Farah if he would answer questions regarding issues involved in the remaining trials for which the Government sought his testimony. Farah persisted in his refusal and indicated he would not testify in any of the trials.[6]

After the deposition, the Government moved to hold Farah in civil contempt based on his refusal to testify at the deposition. The district judge denied the Government's motion, finding in relevant part:

---

[6] Farah was not placed under oath prior to questioning.

The Court concludes that holding Mr. Farah in civil contempt at this stage of the proceedings is not appropriate. The Court ordered the deposition of Mr. Farah in order to secure his testimony and eliminate the need for his appearance as a witness at future trials in the Adan case. Mr. Farah's refusal to testify at the deposition is tantamount to refusing to testify at each of the upcoming trials. Therefore, Mr. Farah no longer needs an opportunity to purge himself of the contempt, as is contemplated by the imposition of civil contempt. Instead, the Government may seek to charge Mr. Farah with criminal contempt for his refusal to testify at the deposition, or alternatively, may seek to have the grand jury issue an indictment for obstruction of justice or other appropriate charges.

On October 3, 2012, the Government filed the three-count indictment giving rise to the instant action.[7] Count One of the indictment charged Farah with violation of 18 U.S.C. § 401(1) for "willfully and knowingly misbehav[ing] in the presence of the [district judge]. . . or so near thereto as to obstruct the administration of justice in" both *Farah* [3:12-85] and the *Adan* actions by refusing to testify at the deposition. Count Two charged Farah with "willfully and knowingly disobey[ing] and resist[ing]" the August 2012 order issued in the cases of *Farah* [3:12-85] and *Adan* by refusing to testify. Lastly, Farah was charged with violating 18 U.S.C. § 1591(d), which punishes interference with the enforcement of child sex trafficking laws.

The district judge presiding over Farah's material witness and contempt proceedings entered an order of recusal because he was mentioned in the body of the indictment and the matter was assigned to a different district judge. Thereafter, Farah filed a motion to dismiss arguing that the indictment violated the constitutional prohibition against double jeopardy, among other things. The district judge denied this motion, as well as Farah's motion to compel discovery related to Somali gangs and witness retaliation and his motion to permit the use of an expert on street gang behavior. At a pre-trial hearing, the district judge informed the parties that he would not permit Farah to present a duress defense at trial.

---

[7] *United States v. Abdullahi Farah*, 3:12-00196.

The trial commenced on April 16, 2013. The Government introduced the August 2012 order and the Notice of Deposition which stated that the purpose of the deposition was for use in the *Adan* case. The parties stipulated to the introduction of evidence that "on or before September 12, 2012," Farah had "material information relating to the enforcement of" 18 U.S.C. §§ 1591(a)(1) & (a)(2), and 1594(c) and that on that same date, the Government was "engaged in the enforcement" of federal laws including "violation of Title 18, USC, Sections 1512(b)(1), 1512(b)(2), 1512(b)(3), 1512(c)(1), and 1512(c)(2), including prosecution" in the *Adan* matter. The jury heard from two law enforcement officials who were present at the deposition, and both testified that Farah stated he would not provide testimony for any of the remaining *Adan* trials.

The jury found Farah guilty of all three counts charged in the indictment, however the district judge subsequently granted Farah's motion for judgment of acquittal in part and set aside Farah's conviction as to Count One. Farah was sentenced to a term of 15-months imprisonment for Counts Two and Three, to run concurrently. Farah's timely appeal followed.

### III.

### A.

Farah argues that the district court erred in denying his motion to dismiss and his convictions should be vacated because the indictment violated the double jeopardy clause of the Fifth Amendment. His refusal to testify at the deposition was a continuation of his conduct in April of 2012–conduct which forms the basis of his prior contempt conviction. He maintains that the Government seeks to transform his single act of contempt into multiple acts of contempt to improperly impose additional punishment.

Conversely, the Government argues that the double jeopardy clause is not implicated here because Farah's first contempt was based upon his refusal to testify during the first *Adan* trial, while the indictment at issue herein arose from his failure to comply with a court order to provide deposition testimony after the conclusion of the first trial in *Adan*. Moreover, the instant action charges Farah with the additional crime

of violating 18 U.S.C. § 1591(d), a charge that was not the subject of the 2012 contempt trial or resulting conviction.

Double jeopardy claims are questions of law that require *de novo* review. *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 411 (6th Cir. 2012); *United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999). The double jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause protects criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977). "[T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors." *Id.*

The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). While *Blockburger* is normally the measure of constitutional compliance, "it is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown*, 432 U.S. at 166 n.6; *see also Rashad v. Burt*, 108 F.3d 677, 679 (6th Cir. 1997) ("[T]he *Blockburger* test is insufficient where, as here, the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction.").

As an initial matter, it appears that reliance on the *Blockburger* test alone will not address the various issues raised by Farah's convictions under 18 U.S.C. § 401(3) and 18 U.S. C. § 1591(d). In *Rashad*, a panel of this Court explained that:

> The *Blockburger* test is designed to deal with the situation where closely connected conduct results in *multiple charges under separate statutes*. In a *Blockburger* case, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative.

*Rashad*, 108 F.3d at 679 (emphasis supplied).  The defendant in *Rashad* argued that his conviction for possession with intent to deliver cocaine after an earlier conviction for possession and delivery of the same substance violated his rights under the double jeopardy clause.  *Id*. at 678.  The arresting officers in *Rashad* discovered cocaine in both his house and car.  *Id.* at 679.  The defendant's first trial for possession with intent to deliver involved the cocaine seized from his residence.  *Id*. at 680.  Roughly six months later, he was tried for possession with intent to deliver in connection with the cocaine seized from his car.  *Id*.  The *Rashad* court concluded that the second prosecution violated the defendant's double jeopardy rights because the "possession of cocaine in his home and in his automobile constituted a single transaction." *Id.* at 680-81.

Farah argues that *Rashad* is similar to the facts of his case, however his reliance is misplaced.  The holding in *Rashad* has been limited by subsequent decisions of this Court.  *See United States v. Forman*, 180 F.3d 766 (6th Cir. 1999); *Murr v. United States*, 200 F.3d 895 (6th Cir. 2000).  In *Murr*, we rejected the defendant's argument that *Rashad* compelled the conclusion that his double jeopardy rights had been violated when he was prosecuted for narcotics offenses in the federal district court for the Eastern District of Kentucky  after pleading guilty to narcotics charges brought in the federal district court for the Eastern District of Tennessee.  *Murr,* 200 F.3d at 901.  In rejecting the defendant's argument, we noted that *Rashad* is "limited to its unique facts, in that 'the issue . . . was whether the defendant had committed one as opposed to two discrete violations of the same statute, not whether the defendant was charged twice for the same violation.'" *Id.* (quoting *Forman*, 180 F.3d at 769).  As such, use of *Rashad* to resolve double jeopardy questions is limited "to circumstances such as were present in th[at] case." *Id*.  Here, the facts of Farah's case are unlike those present in *Rashad*, thus its application is inappropriate.

The Government argues that *United States v. Johnson*, 736 F.2d 358 (6th Cir. 1984) supports its contention, however the Government's reliance on this case is misplaced.  The issue in *Johnson* concerned whether an individual could be confined for civil contempt based on "anticipatory contempt" or refusal to testify at a future trial when

no trial date had been set. *Id.* at 360. There was no anticipatory contempt here as Farah indicated in April of 2012 during the ongoing *Adan* proceedings that he would not testify. Additionally, civil contempt is concerned with forcing the witness to purge himself of the contempt, whereas criminal contempt is aimed at punishing the witness. *Johnson* likewise fails to provide the Court with any guidance.

The most appropriate authority to begin with is that of *Yates v. United States*, 355 U.S. 66, 78 S. Ct. 128, 2 L. Ed. 2d 95 (1957), where the United States Supreme Court vacated all contempt violations save for one concluding "the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already refused answers." *Id.* at 73. On June 26, 1952, during the first day of the petitioner's cross examination in her trial charging violation of the Smith Act, she refused to answer "four questions about the Communist membership of a nondefendant and of a codefendant who had rested his case." *Id*. at 68. She stated that no matter the number of times she was asked "to identify a person as a communist, [she] can't bring [herself] to do it . . . ." *Id.* She was found guilty of civil contempt and committed to jail. *Id.* On the third day of trial, she again refused to answer eleven questions asking her to identify members of the Communist party. *Id.* at 69. The trial court found her guilty of eleven separate criminal contempts. *Id.* In vacating all but the first of the contempt charges, the Supreme Court held:

> Even though we assume the Government correct in its contention that the 11 questions in this case covered more than a single subject of inquiry, it appears that every question fell within the area of refusal established by the petitioner on the first day of her cross-examination . . . . Having once carved out an area of refusal [on June 26, 1952], petitioner remained within its boundaries in all her subsequent refusals.

*Id.* at 73-74. Farah also relies on *Yates*, and argues the Government is "attempting to multiply contempts by repeated questioning on the same subject matter of inquiry within which Mr. Farah has already refused answers."

Thus, based on the rule announced in *Yates*, at least with respect to Farah's conviction for violating 18 U.S.C. § 401(3), the appropriate question is whether Farah's

criminal contempt for refusal to testify in April of 2012, and subsequent identical refusal and conviction constitute improper contempt multiplication in contravention of the double jeopardy clause.  At the hearing in April of 2012, Farah indicated that he would not testify for the prosecution in the "*Adan* case" when asked by the district judge on two occasions.  As in *Yates,* Farah "had flatly refused on [April 18, 2012] to answer any questions and had maintained such a position. . . . Having once carved out an area of refusal, [Farah] remained within its boundaries in all h[is] subsequent refusals." *Yates*, 355 U.S. at 73-74.  Farah's refusal to testify was carved out in April of 2012 and his subsequent refusals "fell within the limits drawn" at the April 18, 2012 hearing and "only one contempt is shown on the facts of this case." *Id*. at 74.

As such, Farah's conviction for violating 18 U.S.C. § 401(3) violates *Yates*. Farah's 2013 conviction stems from his refusal in April of the previous year to testify in the *Adan* case, conduct which he had already been charged and punished for in June of 2012. Farah's contempt, like the petitioner in *Yates*, was continuing and the Government could not tack on multiple punishments.  While the *Adan* case was separated into different trials, Farah's testimony concerned the same subject matter–evidence of the gang's conspiratorial child sex trafficking activities.  Just because a case has been severed into separate trials does not provide the Government an opportunity to tack on criminal contempts in this fashion.  A defendant's risk of re-incarceration and the number of criminal contempts for the same refusal to provide testimony on the same subject conspiracies should not be controlled by the nature of trial practice and court docketing considerations.  The Government's argument that the contempts involve separate transactions is unpersuasive.

While *Yates* is clearly dispositive of the issue, it should be noted that Farah fails to elaborate on *Yates* and its progeny and the Government fails to address *Yates* altogether.  The case law in this area is surprisingly sparse and the courts that have addressed this issue in similar contexts–although never quite factually on point with the circumstances present here–are widely divergent concerning when the government has improperly multiplied contempts in contravention of *Yates* or its reasoning.  The cases

that are the strongest support for Farah include *Baker v. Eisenstadt*, 456 F.2d 382 (1st Cir. 1972); *United States v. Orman*, 207 F.2d 148 (3d Cir. 1953); and *People ex rel. Amarante v. McDonnell*, 100 N.Y.S.2d 463 (N.Y. Sup. Ct. 1950).

There are cases that appear to contravene Farah, however these cases are, for the most part, either factually dissimilar in a significant way or make conclusions without substantive factual and merits determinations. As such, the majority respectfully disagrees with the dissent's suggestion that "our sister circuits stand firmly against" the conclusion reached herein concerning Farah's double jeopardy rights. *See In re Boyden*, 675 F.2d 643 (5th Cir. 1982) (permitting multiple contempts for refusal to testify in separate trials having a common origin because the trials involved different subject matters, as well as because "there is no indication that appellant was called for the sole purpose of being bludgeoned with contempt penalties . . . ."); *In the Matter of Chase*, 468 F.2d 128 (7th Cir. 1972) (allowing multiple criminal contempts when defendant repeatedly refused to stand up during a lengthy trial in defiance of the district court's order to do so); *United States v. Smith*, 532 F.2d 158 (10th Cir. 1976) (allowing two criminal contempts for the defendant's refusal to testify in two successive trials because "the government had reason to expect that the defendant would testify" at the second trial), *United States v. Coachman*, 752 F.2d 685 (D.C. Cir. 1985) (allowing two criminal contempts where appellants refused to testify before the grand jury and later during the trial because the appellants impeded two distinct government functions–investigation by the grand jury and the court in trying the crime–"witness contemptuous conduct in both operations defies governmental authority in each of those separate manifestations, and is guilty of separate contempts"); *United States ex rel. Ushkowitz v. McCloskey,* 359 F.2d 788, 789 (2d Cir. 1966) (three criminal contempts upheld where appellants were subpoenaed to testify before the grand jury and were convicted of contempt for refusing to testify, and after each term of imprisonment, they would again be subpoenaed to testify before the grand jury, refuse to testify and be found in contempt); *United States v. Costello*, 198 F.2d 200 (2d Cir. 1952) (*Yates* relied on this decision, which permitted

one contempt per day during a United States Senate Crime Investigation Committee investigation).

In the majority's view, the dissent applies *Yates* too narrowly and ignores other sister circuit authority supporting Farah's position. *See Baker v. Eisenstadt*, 456 F.2d 382 (1st Cir. 1972); *United States v. Orman*, 207 F.2d 148 (3d Cir. 1953). For instance, in *Baker*, the First Circuit Court of Appeals concluded that the district court improperly multiplied contempts against the petitioner for refusing to testify concerning allegations of judicial misconduct on the part of two judges of the Massachusetts Superior Court. *Id*. at 384, 395. The *Baker* petitioner refused to testify on the subject inquiry and upon later being re-called to the stand, again refused to testify. *Id*. at 385. Forty-five substantive questions were asked, and the petitioner refused to answer each question and was held in contempt for each refusal. *Id*. In concluding the multiple contempts were imposed in error, the *Baker* court held:

> We therefore conclude that petitioner's contempt lay in *refusing to testify at all on the subject inquiry*, that his communicated intent made it clear at the outset that the authority of the Court was frontally challenged and the seriousness of the offense fully delineated, and that the contempt could not therefore be multiplied . . . by running through the entire list of questions.

*Id.* at 393 (emphasis supplied); *see also United States v. Orman*, 207 F.2d at 160 (noting that "where the separate questions . . . relate to but a single subject of inquiry, only one penalty for contempt may be imposed" and "[w]here the witness has refused to give any testimony, a committee cannot multiply his contempt by continuing to ask him questions each time eliciting the same answer.").

Farah clearly declined to testify concerning the Somali Outlaws' sex trafficking of minors in the *Adan* case in April of 2012. The dissent's reliance on the fact that the proceedings were "separate" is the improper focus and an improper application of *Yates*. The fact that the proceedings were "separate" does not alter the fact that the proceedings both dealt with the *Adan* indictment's allegations relating to the gang's conspiracy to

engage in the sex trafficking of minors–the topic to which Farah clearly indicated a refusal to testify about in April of 2012.

The majority further rejects the Government's contention and the dissent's agreement that *Bullock v. United States*, 265 F.2d 683 (6th Cir. 1959) is "the most analogous binding precedent." *Bullock* is distinguishable on the facts and therefore provides no guidance to the Court. In *Bullock*, the defendant was a local resident who was convicted twice for criminal contempt based on two separate instances of obstructionist conduct in contravention of the district court's orders requiring the discontinuance of racial segregation in the local high school. *Id*. at 687-88, 695.

The defendant in *Bullock* was found in criminal contempt for "inciting the citizens of Clinton . . . in a speech he made on August 29, 1956, to violate the [August 29, 1956] restraining order." *Id.* at 688. Several months later, the defendant conspired with others to "congregate [] in a threatening manner along the route to the" school in order to intimidate the students, a direct violation of the district court's September 6, 1956 permanent injunction. *Id.* at 687. In finding no double jeopardy violation, we held that:

> Under the Constitution [defendant] is not immune from prosecution for contempt of court committed in November and December, 1956, simply because he was found guilty of a similar contempt which occurred in August, 1956. Successive and separate contempts are punishable as separate offenses.

*Id*. at 695. Moreover, the defendant in *Bullock* was not sentenced to a term of imprisonment for the first contempt. *See id.*

*Bullock* therefore has nothing to do with the type of contemptuous conduct at issue herein and in *Yates*. That the reasoning in *Bullock* provides no assistance with respect to resolving the double jeopardy question present here is demonstrated by the *Bullock* court's failure to cite to *Yates* altogether in reaching its conclusion. *Bullock* is unlike the circumstances herein and in *Yates*; both involve the repeated and identical refusal to testify to the same subject-matter in a case. As such, *Bullock* is simply

inapplicable and cannot be relied upon in resolving Farah's double jeopardy claim relating to Count Two.

Additionally, the manner in which this conviction came about is somewhat troubling.  An argument can be made that there was no reason to conduct the deposition, other than to tack on additional punishment because the requirements of 18 U.S.C. § 3144 had not been satisfied before the district judge ordered the deposition in August of 2012:

> No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.

18 U.S.C. § 3144.

In order for the district court to order a deposition of a material witness pursuant to 18 U.S.C. § 3144, either the Government or Farah was required to demonstrate the "testimony can adequately be secured by deposition, and that further detention is not necessary to prevent a failure of justice.  Upon such a showing the district court must order his deposition and prompt release." *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 413 (5th Cir. 1992); *see also United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (9th Cir. 1991) (concluding a standing order permitting a magistrate judge to order a § 3144 deposition without the requirement that either the government or the defendant first file "an affidavit establishing that the circumstances contemplated in that section are present" to be procedurally improper).

Here, there had been no demonstration that Farah's testimony could be adequately secured by deposition during the August 2012 hearing.  Rather, Farah stated he would not testify at any of the upcoming trials.  As such, the Government did not establish that Farah's testimony could be "adequately secured," because he stated that he would never provide testimony for the prosecution in the Somali gang case.  To tack on more punishment for Farah's refusal to testify for the prosecution in the *Adan* trials at a compelled 18 U.S.C. § 1344 deposition apparently ordered outside of the statutory

requirements also appears to implicate due process considerations, notwithstanding double jeopardy.

Next, we must consider whether the additional charge of obstruction or attempt to obstruct the enforcement of the child trafficking laws under 18 U.S.C. § 1591(d) makes this case fall outside of the parameters of the double jeopardy clause. The Government maintains that because Farah was charged with violating Count Three, double jeopardy is not implicated because his prior conviction did not include a conviction for obstruction of the enforcement of the child sex trafficking laws. Conversely, Farah argues that his conviction under 18 U.S.C. § 1591(d) cannot stand because its violation required proof by the Government that Farah had also violated 18 U.S.C. § 401(3).

While *Yates* and its progeny were appropriate for determining whether double jeopardy was violated based on impermissible multiple contempts, we must return to *Blockburger* and its progeny and employ the "same elements" test to determine whether Farah has twice been put in jeopardy where he was convicted of obstructing, or attempting to obstruct the enforcement of § 1591(a) after having previously been convicted of criminal contempt.

There is a strong argument that double jeopardy is not implicated and supporting authority exists for this proposition. In *United States v. Laurins*, 857 F.2d 529 (9th Cir. 1988), the defendant argued during direct appeal that his convictions for obstruction of justice, 18 U.S.C. § 1505, and for aiding, abetting, and causing contempt of court in violation of 18 U.S.C. § 401(3), "were improper as double punishment for a single act." *Id.* at 542. The Ninth Circuit Court of Appeals rejected this argument concluding:

> Although the same conduct was the basis for the two counts, proof of contempt of court does not necessarily include proof of obstruction of justice. As discussed above, 18 U.S.C. § 401(3) punishes the disobedience of a court order; 18 U.S.C. § 1505 punishes corrupt obstruction of a pending agency proceeding. Without actually disobeying a court order, an individual could obstruct an IRS investigation by hiding documents sought by the agency. It would also be possible to disobey a

court order without obstructing an investigation by a department or agency of the United States, where no such investigation was pending. Nor is there any evidence in either statute that Congress did not intend to allow separate punishments. The consecutive sentences were proper.

*Id*. (internal citations omitted). Here, Farah's conviction for obstructing or attempting to obstruct the child sex trafficking laws requires proof that he (1) knew of the *Adan* case and (2) obstructed or attempted to obstruct the enforcement or the prosecution of the child sex trafficking laws by refusing to testify at a deposition intended for use during the ongoing *Adan* matter. His contempt conviction required only proof that he disobeyed a judge's court order to testify.

However, Farah argues his double jeopardy rights were violated  because the Government was required to prove all of the elements of the contempt charge under 18 U.S.C. § 401(3) in order to prove the violation of 18 U.S.C. § 1591(d).  While not citing to the decision, it appears Farah is relying on *Brown*, 432 U.S. at 166 n.6, wherein the Supreme Court held:

> The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense.  Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.

*Id.* at 166 n.6.  This argument can be rejected because the circumstances here are unlike those discussed in *Brown*.  *See id.*

Yet, Farah's argument is not wholly without merit where the facts giving rise to Farah's convictions under both statutes are "interrelated," as noted by the district judge at the August 2012 hearing, thus it could be argued that the Government has violated the rule announced in *Yates,* as well as  the principles discussed in *Brown* by obtaining multiple punishments for the same refusal "carved out" in April of 2012 by charging the additional violation of 18 U.S.C. § 1591(d), which could have been tried in June of 2012. However, neither *Yates* nor *Brown* appears applicable to the charges brought under

18 U.S.C. § 1591(d) for purposes of double jeopardy analysis.  Moreover, there is no authority for the proposition that *Yates* intended to bar the Government from exercising its right to enforce the laws and punish those who obstruct its endeavors in this regard separate and apart from its right to seek punishment for contemptuous conduct directed at the court.  As such, we conclude that Farah's double jeopardy rights have not been violated with respect to his conviction for attempting to obstruct the enforcement of the child sex trafficking laws in violation of 18 U.S.C. § 1591(d).[8]

Because Farah can only demonstrate the violation of his double jeopardy rights in part, we vacate his conviction only as to Count Two.

**B.**

Farah argues that the district court erred in denying his motion to dismiss Count Three as defective because, as a mater of law, the government did not allege and could not prove the required intent.  The Government counters that the requisite mental state for a violation of 18 U.S.C. § 1591(d) is "knowingly," and since this mental state is alleged in the indictment and the evidence at trial established same, Farah's argument is without merit.

Whether an indictment adequately charges an offense is a question of law subject to *de novo* review.  *United States v. Hill*, 167 F.3d 1055, 1065 (6th Cir. 1999).  The Notice Clause of the Sixth Amendment guarantees a defendant's right to be informed of the charges against him.  *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992).  An indictment is constitutionally adequate "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed.  2d 590 (1974); *see also United States v. Monus*, 128 F.3d 376, 388

---

[8]While we are troubled by the procedure within which the deposition was ordered, this is not enough to implicate double jeopardy with respect to Count Three, particularly where, as here, the statutes seek to punish different contemptuous conduct-directed at court business or directed at obstruction to the enforcement of the child sex trafficking laws. *See Laurins*, 857 F.2d at 542.

(6th Cir. 1997).  Under this standard, "[a]n indictment will usually be sufficient if it states the offense using the words of the statue itself, as long as the statute fully and unambiguously states all the elements of the offense."  *Superior Growers Supply*, 982 F.2d at 176.

Title 18 U.S.C. § 1591(d) states: "Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of [15 U.S.C. § 1591(a)] shall be fined under this title, imprisoned for a term not to exceed 20 years, or both."  Farah argues that 18 U.S.C. § 1591(d) requires that he act with a "corrupt" mental state and the indictment merely alleged "knowing conduct."  However, Farah fails to convince the Court, without any supporting authority, that Congress intended the omnibus provision of 18 U.S.C § 1503 to apply to 18 U.S.C. § 1591(d), as he suggests.  Moreover, Farah ignores authority standing for the proposition that where a statute is silent as to the *mens rea* requirement, the appropriate standard is whether the act is done "knowingly." *Staples v. United States*, 511 U.S. 600, 619, 114 S. Ct. 1793, 128 L. Ed.  2d 608 (1994); *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992).

Here, the statute is silent, thus knowingly is the appropriate *mens rea*. *Staples*, 511 U.S. at 619; *DeAndino*, 958 F.2d at 148.  The indictment charged that Farah "knowingly did attempt to obstruct . . . the enforcement of Title 18 United States Code, Section 1591(a)" on September 12, 2012.  Farah was fully aware of the *Adan* matter; having provided testimony to the grand jury on three separate occasions, found in civil, as well as criminal contempt.  Farah knew of the Government's endeavors with respect to the *Adan* matter, and knew that refusing to testify would impede the prosecution of the case and the enforcement of the child sex trafficking laws.  *See Pettibone v. United States*, 148 U.S. 197, 208, 13 S. Ct. 542, 37 L. Ed. 419 (1893) (holding under predecessor statute that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court.").  Farah was fully aware that he was a material witness and the Government's ability to establish its conspiracy case, which included 30 defendants, many of whom most likely can only be identified

by voice with the help of Farah's testimony, was dependent on his cooperation. As such, Farah's Sixth Amendment rights were not violated because the indictment fully informed him of the charges.

Farah further asserts that § 1591(d) is constitutionally void for vagueness, both in general and as applied to him. "The void-for-vagueness doctrine requires that [th]e statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Bazazpour*, 690 F.3d 796, 800 (6th Cir. 2012) (internal quotations omitted). This argument likewise lacks merit. Farah's conduct in refusing to testify for the prosecution surely falls within the ambit of 18 U.S.C. § 1591(d). He knew that his conduct would interfere with the prosecution of the *Adan* defendants and the Government's enforcement of the child sex trafficking laws. Farah has not demonstrated entitlement to relief on his second and third claims for relief.

## C.

Additionally, Farah maintains that the district court erred in denying his motion to compel the Government to produce evidence related to his fear of retaliation. Specifically, Farah requested evidence related to gang violence and witness retaliation and claims that this evidence might have enabled him to alter the proof in his favor. A district court's application of the rules of criminal procedure are reviewed for abuse of discretion. *United States v. Semrau*, 693 F.3d 510, 529 (6th Cir. 2012). None of Farah's arguments have merit. Rule 16(a)(1)(E)(iii) is inapplicable because Farah could not establish the items sought belonged to the Government. Moreover, Farah curiously admits he had knowledge of some of the evidence, undermining his claim that *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) has been violated. *See Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004) ("[W]here the defendant was aware of the essential facts that would enable him to take advantage of the exculpatory evidence, the government's failure to disclose it d[oes] not violate *Brady*.")

In any event, we conclude the district court correctly determined that Farah was not entitled to a duress defense. Whether a defendant has established a prima facie case of duress is a question of law and on appellate review is reviewed *de novo. See United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005) (in order to proffer duress defense, a defendant must proffer some evidence of "an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.") Here, there is an absence of record evidence demonstrating satisfaction of the elements for a duress defense. Nor would the evidence undermine the "knowing" *mens rea* element of 18 U.S.C. § 1591(d) requiring proof beyond a reasonable doubt that Farah knew his conduct would interfere with the enforcement of the child sex trafficking laws. Because Farah was not entitled to a duress defense, his argument that the district judge erred in excluding expert testimony on street gang behavior requires no further discussion.

Farah is not entitled to relief on claims IV through VI.

**D.**

In his final claim of error, Farah argues that the district court erroneously failed to correct prosecutor misstatements of law and fact made during closing arguments which denied him due process. We ordinarily review claims of prosecutor misconduct *de novo. United States v. Lawrence*, 735 F.3d 385, 482 (6th Cir. 2013). Here, we conclude that any purported misstatement of law did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). To satisfy this standard, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F. 3d 392, 412 (6th Cir. 2006). This court considers four factors to determine whether a prosecutor's conduct is flagrant. *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). Specifically, the factors include: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; (4) the total strength of the evidence against the defendant." *Id.*

During closing arguments, the Government argued that Farah's conduct deprived the jury, the court and the parties of material information. Specifically, at the conclusion of his remarks concerning the proof required to establish guilt as to Count Three, the prosecutor argued:

> And in the United States defendants have the right to be confronted by the witnesses against them associated with the actual information.
>
> So does it obstruct justice if witnesses, such as defendant in this particular case, refuse to come in to testify as to the information that they have? The material information that they have associated with criminal acts of others.
>
> The answer is yes, it does. It deprives a jury, it deprives the Court, it deprives the parties of that material information, to make a decision as to those offenses.

Defense counsel, arguing outside of the presence of the jury:

> Judge, he just stated the reason – why this jury needs to know what a deposition pursuant to 3144 is all about. Because now he's saying that his case has been obstructed because the defendants have been deprived of his testimony, when in fact the defendants were not deprived of his testimony because the trial has not yet occurred. He can still be called as a witness. All that's happened is Mr. Farah deprived himself of the opportunity to be released by providing the testimony pursuant to 3144.

The district judge admonished counsel stating: "Don't go down that line any more. We're going to finish this, see what the jury does, and then see if we need to have post-trial motions."

Here, even if the prosecutor's arguments were improper, they were not flagrant. Farah's claim relies on a misunderstanding of the district judge's decision to vacate his conviction on Count One. The district judge vacated his conviction on Count One because there had been no evidence at trial that Farah's conduct resulted in the interference with court business. While Farah's persistent refusal to testify as a material witness may not have interfered with court business, that does not necessarily lead to the

conclusion that his conduct did not interfere with the Government's enforcement of 18 U.S.C. § 1591(a), as correctly concluded by the trial court.

Moreover, taken in the context of the entire trial, we cannot conclude that the statements so infected Farah's trial with unfairness as to deprive him of due process. The prosecutor's statements were isolated, occurring only twice during the entirety of his closing argument. Additionally, the record demonstrates that the prosecutor was not deliberately trying to mislead the jury as just prior to discussing the elements required to prove a violation of 18 U.S.C. § 1591(d), he stated: "And, again, if the Court charges you something different than what the United States says, be sure to follow the Court's instruction. This is what the United States anticipates the elements for the offenses will be. Okay?" (*Id.* at 222.) Lastly, the evidence against Farah was sufficient to support his conviction on Count Three based on the testimony that he had refused to testify at a deposition for a prosecution directed at enforcing the laws of the United States.

Farah is likewise not entitled to relief on claim VII.

## IV.

Based on the foregoing considerations, we AFFIRM Farah's judgment of conviction on Count Three, 18 U.S.C. § 1591(d), and VACATE Farah's judgment of conviction on Count Two, 18 U.S.C. § 401(3), and REMAND this matter for further proceedings consistent with this opinion.

––––––––––––––––––

DISSENT

––––––––––––––––––

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.  Long ago, the Supreme Court recognized that "no [person] can be twice lawfully punished for the same offence . . . when a second punishment is proposed in the same court, on the same facts, for the same statutory offence." *Ex parte Lange*, 85 U.S. 163, 168 (1873).  "Successive and separate contempts," however, "are punishable as separate offenses." *Bullock v. United States*, 265 F.2d 683, 695 (6th Cir. 1959).  In 2010, the government indicted thirty members of the Somali Outlaws on sex-trafficking charges.  In 2012, Abdullahi Farah refused to testify at the trial of nine of the Somali Outlaws named in the indictment.  For his refusal, Farah was found guilty of criminal contempt, in violation of 18 U.S.C. § 401(3), and given a sentence of four months of imprisonment.  A year later, Farah refused to testify again, this time at a deposition to be used in *different trials* against the other twenty-one defendants.  Once again, the government indicted Farah for criminal contempt under § 401(3); he was found guilty and sentenced to prison.  In my view, these two convictions punished two different acts and did not offend the Fifth Amendment.  Because the lead opinion sees things differently, I respectfully dissent from Part III.A.

**I.**

On April 16, 2012, the government was in the middle of trying nine of the Somali Outlaws.  *See* R. 2325 (Minute Entry) (Page ID #12374) (Case No. 3:10-cr-260).  As part of its case against those nine defendants, the government wanted to call Farah as a witness to "identif[y] particular defendants" and "identif[y] particular defendants' voices." R. 23 at 6:20–22 (Apr. 18, 2012 Hr'g Tr.) (Page ID #74) (Case No. 3:12-cr-85).  Despite being held as a material witness "[d]uring the course of *this trial* at *this time*," *id.* at 7:17–18 (Page ID #75) (emphasis added), Farah refused to testify, and in response, the government filed a motion to compel his testimony in the ongoing trial.  *See* R. 2 at

1 (Mot. to Compel) (Page ID #2) (Case No. 3:12-cr-85). Two days later, the district court held a hearing, found Farah in civil contempt for "refus[ing] to testify in the *Adan* case," and explained that "[i]f [Farah] [did not] change [his] mind, [he would] be held in custody pending the duration of the *Adan* trial." R. 23 at 17:25, 18:6–8 (Apr. 18, 2012 Hr'g Tr.) (Page ID #85, 86) (Case No. 3:12-cr-85). The district court further stated that if Farah failed to "testify by the end of the *Adan* trial, [it] intend[ed] to hold [him] in criminal contempt." *Id.* at 18:12–13 (Page ID #86). On April 25, 2012, the government filed a notice with the district court that "it closed its proof" in the trial of the first nine Somali Outlaws.[1] R. 7 at 1 (Notice Re: Material Witness) (Page ID #15) (Case No. 3:12-cr-85). On June 7, 2012, the district court held a bench trial and convicted Farah of criminal contempt in violation of 18 U.S.C. § 401(3). R. 34 at 9 (D. Ct. Op.) (Page ID #159) (Case No. 3:12-cr-85). The district court then sentenced Farah to four months of imprisonment. R. 39 at 2 (D. Ct. J.) (Page ID #178) (Case No. 3:12-cr-85).

On July 24, 2012, Farah filed a "Motion for Review of Detention Order," arguing in part that 18 U.S.C. § 3144 (the material-witness statute) does not permit the continued detention of a purported material witness if "'the testimony of such witness can adequately be secured by deposition.'" R. 41 at 7–8 (Mot. for Review) (Page ID #192–93) (Case No. 3:12-cr-85) (quoting 18 U.S.C. § 3144). On August 23, 2012, the district court granted this motion in part, ordering that a "deposition shall occur before Farah's sentence for criminal contempt expires in approximately October[] 2012." R. 48 at 3 (D. Ct. Dep. Order) (Page ID #291) (Case No. 3:12-cr-85).

The district court scheduled Farah's deposition for September 12, 2012. Once again, Farah refused to testify, and the government filed a motion for Farah to be held in civil contempt. R. 73 at 1 (Gov't Contempt Mot.) (Page ID #471) (Case No. 3:12-cr-85). The district court decided that

> holding Mr. Farah in civil contempt at this stage of the proceedings is not appropriate. The Court ordered the deposition of Mr. Farah in order to secure his testimony and eliminate the need for his appearance as a

---

[1]Ultimately, six of the defendants in this trial were acquitted of all charges; the other three defendants were convicted of lesser-included offenses.

witness at future trials in the *Adan* case. Mr. Farah's refusal to testify at the deposition is tantamount to refusing to testify at each of the upcoming trials. Therefore, Mr. Farah no longer needs an opportunity to purge himself of the contempt . . . .

R. 80 at 5 (D. Ct. 9/20/12 Order) (Page ID #566) (Case No. 3:12-cr-85). If the government wished to punish Farah for his continued refusal, the district court suggested that the government "seek to charge Mr. Farah with criminal contempt" or "seek to have the grand jury issue an indictment for obstruction of justice." *Id.*

On October 3, 2012, the government followed this advice and secured an indictment, which charged [Farah] with violating 18 U.S.C. § 401(3), among other statutes, for "refusing to testify in the deposition held September 12, 2012" in contravention of the district court's order. R. 1 at 2 (Indictment) (Page ID #2) (Case No. 3:12-cr-196). On April 17, 2013, after a trial, the jury convicted Farah of violating § 401(3).

## II.

On appeal, Farah argues that this second conviction for violating 18 U.S.C. § 401(3) runs afoul of the Double Jeopardy Clause. The majority agrees, holding that "Farah's refusal to testify was carved out in April of 2012 and his subsequent refusals 'fell within the limits drawn' at the April 18, 2012 hearing and 'only one contempt is shown on the facts of this case.'" Majority Op. at 13 (quoting *Yates v. United States*, 355 U.S. 66, 74 (1957). Certainly, *Yates* is the logical starting point; however, my understanding of that case and its progeny leads me to the opposite conclusion regarding Farah's double-jeopardy claim.

In *Yates*, a defendant—Oleta O'Connor Yates—refused to answer eleven questions over two days of one trial, and for these eleven refusals, she was convicted on eleven charges of criminal contempt. *Id.* at 72. The Supreme Court overturned ten of the convictions, holding that Yates's refusal to testify during one proceeding constituted a single, continuing contempt. *Id.* at 74. By overturning all but one of the convictions, the Supreme Court made "clear that the prosecution cannot multiply contempts by

repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers." *Id.* at 73.  After all, a witness could refuse to testify at a proceeding entirely and would be guilty of only one contempt.  *Id.*  It would make little sense to subject "a witness willing to testify freely as to all areas of investigation but one . . . to more numerous charges of contempt than a witness unwilling to give any testimony at all."  *Id.*  Under *Yates*, therefore, a witness can "carve[] out an area of refusal" and decline to answer any questions within the boundaries of her carve out, and the government can bring only one criminal-contempt charge for refusing to testify at that proceeding.  *Id.*

This reading of *Yates*, limited as it is to a witness's refusal to testify during a single proceeding, is logical and uncontroversial.  Courts across the country share this view.  *See, e.g.*, *United States v. Lach*, 874 F.2d 1543, 1549 (11th Cir. 1989) ("*Yates* . . . stands only for the proposition that repeated or serial refusals to answer identical or similar questions in a single proceeding may not be used to establish multiple, separate offenses for what is, in essence, a single, continuing contempt."); *Baker v. Eisenstadt*, 456 F.2d 382, 385 (1st Cir. 1972) (vacating multiple contempt convictions when defendant refused to answer forty-three questions in a single hearing); *United States v. Orman*, 207 F.2d 148, 160 (3d Cir. 1953) (vacating multiple contempt convictions when a defendant refused to answer multiple questions in a single hearing); *United States v. Costello*, 198 F.2d 200, 204 (2d Cir. 1952) (A. Hand, J.) (vacating multiple contempt convictions for refusing to answer multiple, related questions during a single hearing); *People ex rel. Amarante v. McDonnell*, 100 N.Y.S.2d 463, 467 (N.Y. Sup. Ct. 1950) (vacating multiple contempt convictions for refusing to answer seven questions before a single grand jury).

*Yates*, however, does not stand for the proposition that a witness may refuse to testify at two separate proceedings, against different defendants, and then have that refusal count as a single, continuing contempt.  In fact, our sister circuits stand firmly against this understanding.  In *United States v. Coachman*, 752 F.3d 685 (D.C. Cir. 1985), "[witnesses] were twice held in criminal contempt, first when they refused to

testify during a grand jury investigation, and again when they refused to testify at a trial emanating therefrom." *Id.* at 687.  The D.C. Circuit "conclude[d] that a witness [was] contemptuous in both operations [by defying] governmental authority in each of those separate manifestations, and [wa]s guilty of separate contempts." *Id.* at 691.  In *In re Boyden*, 675 F.2d 643 (5th Cir. 1982), a witness refused to testify at three separate trials against three separate defendants allegedly involved in a single drug-smuggling conspiracy.  *Id.* at 644.  The Fifth Circuit held that the witness committed three separate offenses because "[i]n each case that Boyden was called to testify, the government had to prove a separate offense [against the smugglers].  His testimony would overlap only because of the cases' common origin." *Id.*  Likewise, in *United States ex rel. Ushkowitz v. McCloskey*, 359 F.2d 788 (2d Cir. 1966), a witness was called to testify before a grand jury; he refused, was convicted of criminal contempt, and served his sentence.  *Id.* at 789.  Once the witness finished his first sentence, the government called him to testify before the same grand jury again, and the court upheld another criminal-contempt conviction.  *Id.*  This cycle repeated again, and the Second Circuit upheld a third conviction because although "[t]he conduct for which the sentences were imposed was similar conduct, . . it was engaged in on three occasions separated from each other by appreciable periods of time." *Id.*

In my view, the record indicates that Farah defied two separate district-court orders by refusing to testify at two separate proceedings and, thus, committed two separate contempts.  In April 2012, the district court ordered Farah to testify at "the *Adan* trial" involving nine of the Somali Outlaws defendants.  R. 23 at 18:6–8 (Apr. 18, 2012 Hr'g Tr.) (Page ID #86) (Case No. 3:12-cr-85).  In September 2012, the district court ordered Farah to testify at a deposition to be used in the four other *Adan* trials, involving the twenty-one other defendants.  The subject matter of Farah's testimony might have been similar at both proceedings, but, as in *Boyden*, "[h]is testimony would overlap only because of the cases' common origin." 675 F.3d at 644.  In each case, he would be asked to testify to the particular defendants' identity, actions, and voices.  *See* R. 23 at 6:20–22 (Apr. 18, 2012 Hr'g Tr.) (Page ID #74) (Case No. 3:12-cr-85).  Moreover, like the

defendant in *Coachman*, Farah defied "governmental authority in [two] separate manifestations," 752 F.3d at 691, and Farah refused to testify "on [two] occasions separated from each other by [an] appreciable period[] of time," *McCloskey*, 359 F.2d at 789. As a result, I see very little in common between Farah's case and *Yates*.

For me, the most analogous binding precedent is *Bullock v. United States*, 265 F.2d 683 (6th Cir. 1959), a case that the majority dismisses as "distinguishable on the facts." Majority Op. at 16. In *Bullock*, the district court had entered a preliminary injunction, prohibiting individuals from interfering with the desegregation of the local schools. 265 F.2d at 687. In late August 1956, the defendant—Frederick John Kasper—"threatened to have the principal of the school ousted" if he allowed integration, and Kasper "took other steps aimed at . . . restor[ing] segregation in the high school . . . ." *Id.* For this behavior, he was found guilty of criminal contempt. *Id.* at 688. A few months later, Kasper returned to his despicable ways, encouraging others to block the entry of African-American students to the high school and to beat the minister escorting the children to the schoolhouse door. *Id.* at 687. Shortly thereafter, the federal government brought various charges against Kasper and others, including a second criminal-contempt charge for Kasper. The jury convicted Kasper of criminal contempt, and he challenged this conviction on double-jeopardy grounds. We bluntly stated: "Under the Constitution Kasper is not immune from prosecution for contempt of court committed in November and December, 1956, simply because he was found guilty of a similar contempt which occurred in August, 1956." *Id.* at 695. The same should be said here. Farah's conviction for refusing to testify at a trial in April 2012 involving certain defendants does not, in my view, render him immune from a second prosecution for defying a court's order to testify at a deposition in September 2012 to be used in trials involving a different set of defendants.

Importantly, I do not believe that that the government could call Farah as a witness at the trial of one of those twenty-one other defendants and obtain a third criminal-contempt conviction if Farah refused to testify. In refusing to testify at the deposition, which would be used in the prosecution of the other twenty-one defendants,

Farah has carved out his zone of silence with regard to the prosecution of those defendants. He has suffered the penalty for that silence. Calling Farah to testify at a subsequent proceeding in the same prosecution would be hardly different than asking him multiple questions regarding a certain subject in a single proceeding, a practice prohibited by *Yates*. The key difference between the second conviction in this case and this hypothetical third conviction is that in September 2012 Farah had never been ordered to testify about that which he refused to testify. If the government called Farah to testify in the actual trial of one of the twenty-one defendants who were the subject of the deposition, that would no longer be true—the government would be seeking a subsequent conviction for a continuing refusal to testify about a subject to which Farah had already been ordered to testify.[2]

Moreover, the text of 18 U.S.C. § 401(3) makes this distinction clearer. A person must "disobe[y] or resist[] [a court's] lawful writ, process, order, rule, decree, or command" to violate § 401(3). In the first order, the court compelled Farah to testify regarding nine defendants and their crimes. When faced with this order to testify at those defendants' trial, Farah could not defy the order by refusing to testify to about twenty-one other people under indictment and their crimes. In each case, the government needed different information, and therefore, two orders were needed. Whether Farah made his intent to defy the district court's future orders known in advance is beside the point because there was no second violation of the statute until he actually defied the second order. Therefore, Farah's refusals are two separate criminal actions.

Finally, it should be noted that in these types of cases, such "contumacious refusal[s] to answer not only frustrate[] the inquiry but can destroy a prosecution," as may have happened in the first trial. *United States v. Wilson*, 421 U.S. 309, 316 (1975). "Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case." *Id.* Given the evidence in the

---

[2] In the abstract, this rule may allow the government to break its prosecutions into multiple trials in order to obtain multiple contempt convictions. As a practical matter, I doubt that it would be in the government's interest to do so, and more importantly, there would likely be serious due-process concerns if there were evidence that the government was manipulating its prosecution of cases merely to pile on contempt charges against a potential witness. *See Boyden*, 675 F.2d at 644 ("There is no indication that [the witness] was called for the sole purpose of being bludgeoned with contempt penalties.").

record, it is clear to me that Farah frustrated the public's right to every person's evidence on two separate occasions and placed himself in jeopardy of two separate charges. I see no double-jeopardy problem, and for this reason, I respectfully dissent from Part III.A of the majority opinion.